CITY OF COLUMBUS, APPELLANT, *v.* NEW ET AL., APPELLEES.

[Cite as Columbus *v.* New (1982), 1 Ohio St. 3d 221.]

(No. 81-1389—Decided August 11, 1982.)

*Mr. Gregory S. Lashutka,* city attorney, *Mr. Ronald J. O'Brien* and *Mr. David E. Tingley,* for appellant.

*Mr. James Kura,* county public defender, *Mr. F. Richard Curtner* and *Ms. Barbara J. Slutsky,* for appellees.

*Per Curiam.* The major issue presented in this case is whether the falsification ordinance of the city of Columbus, C.C. 2315.08(B), is constitutional.

In the cases of *Columbus* v. *Fisher* (1978), 53 Ohio St. 2d 25 [7 O.O.3d 78], and *Dayton* v. *Rogers* (1979), 60 Ohio St. 2d 162 [14 O.O.3d 403], this court had the opportunity to consider the validity of two falsification ordinances. While the decisions in those cases provide insight into the resolution of the instant case, they are not dispositive. In these cases, this court limited its consideration solely to the legislative intent behind the ordinance and thus did not consider the constitutional validity of the ordinance.

As such, this is a case of first impression. This court, after having carefully considered the ordinance in question, joins in the consensus of near unanimity among the municipal judges of Franklin County,[1] and with the

---

[1] The following judges of the Franklin County Municipal Court are among those who have found the Columbus falsification ordinance unconstitutional: Judge James C. Britt, *City of Columbus* v. *Stewart* (January 29, 1981), No. M80-CR-B-024067; Judge Sidney H. Golden, *City of Columbus* v. *Bell* (January 26, 1981), No. M80-CR-B-023789; Judge George C. Smith, *City of Columbus* v. *Newman* (February 11, 1981), No. 80-CR-B-019815; Judge C. Howard Johnson, *City of Columbus* v. *Warner* (February 13, 1981), No. M81-CR-B-991662.

Court of Appeals, in holding that the falsification ordinance of the city of Columbus is unconstitutional.

The falsification ordinance for the city of Columbus, is codified in C.C. 2315.08. As amended on June 2, 1980, this section provides, in pertinent part, as follows:

"(B)(1) No person shall knowingly make a false, oral or written, sworn or unsworn, statement to a law enforcement officer who is acting within the scope of his duties.

"(2) This section does not apply to failure to respond to inquiries by law enforcement officers, and does not apply to statements which are protected by a constitutional or statutory privilege."

Appellees' contention that this ordinance is unconstitutional in that it is void for vagueness and thus violative of Article I, Section 16 of the Ohio Constitution and of the Fourteenth Amendment to the United States Constitution is well taken.[2] The standards to be used to determine whether an enactment is void for vagueness were stated by the United States Supreme Court in *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156, wherein the court held a vagrancy ordinance unconstitutional. In *Papachristou,* the court stated, at page 162, that an ordinance is void for vagueness, and thus violative of due process of law, if it "* * * 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute' * * *" and "* * * because it encourages arbitrary and erratic arrests and convictions. * * *"

In addressing the first prong of this test, the court in *Papachristou, supra,* warned of the dangers which result in the absence in an enactment of ascertainable standards of guilt. The court noted that the dangers associated with the enactment of broad criminal statutes have long been recognized, quoting the following from the 1876 case of *United States* v. *Reese,* 92 U.S. 214, 221: "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large."[3]

The falsification ordinance of Columbus, as did the vagrancy ordinance of Jacksonville, casts a net which is too large to be constitutionally permissible. Judge McCormac, in *Columbus* v. *Fisher* (January 6, 1977), (Tenth District Court of Appeals, No. 76-AP 676, unreported), recognized this very problem when, in analogizing falsification ordinances to vagrancy ordinances, he stated at page 6:

---

[2] The "due course of law" phrase in Section 16, Article I of the Ohio Constitution has been recognized as being parallel in meaning to the "due process of law" phrase as employed in the Fourteenth Amendment to the United States Constitution. See, *e.g., Barnhardt* v. *Linzell* (1957), 104 Ohio App. 243.

[3] The *Papachristou* court noted, at page 165, that "[w]hile * * * [*Reese*] was a federal case, the due process implications are equally applicable to the States * * *."

"It is felt that C.C. Section 2315.08(A)(3) is similarly not intended to apply to a denial of identity or possession of identification of a suspect who has not initiated the conference and who has made no affirmative, aggressive or overt misstatements. To hold otherwise is, in our opinion, to substantially broaden the purpose of the crime of falsification and to open the door for discriminatory use of the serious criminal charge of falsification against the suspect who is otherwise felt to be a bad actor, but who cannot be proved to be guilty of the charge being investigated. Falsification, if interpreted as did the trial court, would thus potentially take the place of the now prohibited and repealed suspicious person ordinance in providing an avenue to penalize the uncooperative suspect who does not have to be advised of possible consequences of exculpatory denials in that the offense is a misdemeanor to which *Miranda* rights do not apply."

This undesirable result is due, in large measure, to the fact that the language in the ordinance lacks definiteness. Close scrutiny of the language of the falsification ordinance reveals that it fails to give notice as to precisely what conduct is criminally proscribed. For instance, the intended scope of the adverb "knowingly" in the ordinance is unclear. As the American Civil Liberties Union pointed out in its amicus curiae brief, "[i]t is unclear whether 'knowingly' means only that the accused must have known that his/her statement was false in order to have violated the ordinance, or that the accused must have known that the statement was false *and* that the statement was made to a law enforcement officer, or that the accused knew that the statement was false, *and* that the statement was made to a law enforcement officer, *and* that the law enforcement officer was acting within the scope of the officer's duties at the time of the rendering of the false statement."[4]

As can be gleaned by the above quotation, the meaning of the phrases "false * * * statement" and "within the scope of his duties" is subject to broad interpretations which further add to the ambiguity of the ordinance.

---

[4] The American Civil Liberties Union further stated that:

"The ambiguity of the intended scope of application of this term is significant, because different interpretations confer the ordinance a vast range of possible degrees of culpability which could sustain a conviction under the statute. ORC § 2901.22, 'Culpable mental states,' does not guide us in determining which level of culpability is contemplated by the ordinance. We are unable therefore to determine from reading the ordinance whether this is a general *mens rea* crime, in which the state must prove 'guilty mind' (or wrongful intent), or whether it is a stricter *mala prohibita* crime, where the government must prove only that the act of giving a false statement is as intentionally done.

"The 'knowingly' language of this ordinance is confusing in making a determination of culpability because one could knowingly give a false statement under this statute without having any wrongful intent in doing so. Similarly, one could knowingly give such a false statement, without any wrongful intent, but which still could seriously disrupt a policeman's duties. And, one could knowingly give a false statement, without any wrongful intent, which had no disruptive effect on the officer's duties. We point out therefore that courts and policemen could reasonably differ as to what constitutes a crime under the ordinance, and that ordinance provides no standards by which to make a determination regarding an accused's culpability under § 2315.08(B)."

The problems associated with the interpretation of this enactment were addressed by Municipal Court Judge Dale A. Crawford in *Columbus* v. *Jackson* (October 28, 1980), Franklin County Municipal Court, No. M-80-CR-B-18647, unreported. While recognizing that the General Assembly may well have the power to make false unsworn statements to law enforcement officials a violation of law, he stressed that "* * * it must do so in such a way not to have a vague ordinance that is overbroad in effect. The ordinance before the court prohibits activities that the legislative branch of government could not have intended to be made criminal. Under C.C.C. Section 2315.08(B) a person would be in violation of law if, while investigating a traffic accident, a person gave the officer unsolicited statements to the police officer:

"(1) 'It's a dry day today, officer' — when, in fact, it was raining and the defendant knew it was raining; or

"(2) 'Officer, Ohio State lost today' — when, in fact, the defendant knew that Ohio State had won today." *Id.,* at page 6.[5]

As these examples aptly illustrate, this falsification ordinance is a broad criminal enactment and, as such, it encourages arbitrary and discriminatory enforcement. This court acknowledges that it may well be unlikely that this ordinance will be used to criminalize the making of false statements about the weather or the victor in a ball game. The fact that such a broad range of activities could reasonably be deemed criminal under the current language of the ordinance, however, vividly emphasizes that there are no standards governing the exercise of discretion granted by the ordinance.

As a result, C.C. 2315.08 has the effect of placing unfettered discretion in the hands of police. Consequently, whether an individual would be convicted or even arrested, would be a function of the personal predilections of the particular officer or court rather than a function of standards enunciated by law.

Such a result is clearly violative of due process, for it is well established that due process principles mandate criminal statutes be clear in their proscriptions. (See, *e.g., Coates* v. *City of Cincinnati* [1971], 402 U.S. 611 [58 O.O.2d 481].) Lacking such standards, this scheme, as did the one in *Papachristou,* permits and encourages arbitrary and discriminatory enforcement of the law.

Thus, the application of the test as enunciated by the United States Supreme Court in *Papachristou* to the falsification ordinance at issue requires this court to hold that C.C. 2315.08 is unconstitutional in that it is void for vagueness since it fails to give fair notice that certain conduct is forbidden and since it encourages arbitrary and erratic arrests and convictions.

---

[5] The United States Supreme Court quoted the following language from *State* v. *Diamond* (1921), 27 N.M. 477, 485, 202 P. 988, in *Winters* v. *New York* (1948), 333 U.S. 507, 516:

" 'Where a statute uses words of no determinative meaning, or the language is so general and indefinite as to embrace not only acts commonly recognized as reprehensible, but also others which it is unreasonable to presume were intended to be made criminal, it will be declared void for uncertainty.' "

Throughout these proceedings, the city has urged a comparison of C.C. 2315.08(B) with Section 1001, Title 18, U.S. Code, in support of its position that C.C. 2315.08 is constitutional. Section 1001 provides as follows:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

As the appellate court noted, "[s]uch a comparison only emphasizes the constitutional infirmities of C.C. 2315.08(B)." While restrictive interpretations of Section 1001 by federal courts have saved this statute from being declared unconstitutional,[6] the appellate court correctly stated that "[a] review of C.C. 2315.08(B) indicates that there is no language within the ordinance capable of restrictive construction. In order for this court to construe C.C. 2315.08(B) in a manner that would allow it to pass constitutional muster would require a complete rewriting of the ordinance." The court noted further that "[a]s it now stands, C.C. 2315.08(B) proscribes the knowingly making of any false statement to a police officer without any restriction as to the nature of the statement and whether said statement interferes with the proper detection, apprehension, investigation, prosecution or punishment of criminal offenses. In the absence of such restrictions, the ordinance is unconstitutionally overbroad, as it allows for the employment of coercive inquisition as a method of criminal investigation" in violation of the Fourth Amendment to the United States Constitution.[7]

Furthermore, this court is not convinced by the city's apparent argument that the constitutional infirmities inherent in C.C. 2315.08(B)(1) are remedied by C.C. 2315.08(B)(2). Contrary to the city's assertion, the language in (B)(2) does not clarify the overly broad prohibition against all false statements knowingly made to law enforcement officials found in (B)(1). Because the language in (B)(2) fails to identify any specific constitutional or statutory privileges one must speculate in order to determine these privileges. This

---

[6] The restrictive interpretations of Section 1001, Title 18, U.S. Code, have been based on a strict application of the phrases "material fact," "statement," and "within the jurisdiction of any department or agency of the United States," found in the statute. See Notes: Fairness in Criminal Investigations Under the Federal False Statement Statute, 77 Columbia L. Rev. 316; Criminal Liability for False Statements to Federal Law Enforcement Officials, 63 Va. L. Rev. 451.

[7] Similarly, Judge Crawford, in *Columbus* v. *Jackson* (October 28, 1980), Franklin County Municipal Court, No. M-80-CR-B-18647, unreported, at pages 3-4, noted that:

"The statements made to the law enforcement officer need not relate to the investigation the officer is making; the defendant need not know the person to whom he is speaking is a law enforcement officer; the statement need not be material to the investigation the law enforcement officer is conducting; nor does the defendant have to purposely mislead the officer, to be a violation of this ordinance."

need to speculate, however, is violative of due process of law, for due process requires that no individual should have to speculate, at peril of life, liberty or property, as to the meaning of penal statutes. (See, *e.g., Champlin Refining Co.* v. *Corporation Commission of Oklahoma* [1932], 286 U.S. 210; *Coates* v. *City of Cincinnati, supra; United States* v. *Powell* (1975), 423 U.S. 87 [58 O.O.2d 481].)

The city, acknowledging that federal courts in addressing the application of the federal falsification statute have recognized that exculpatory denials should be excepted from the application of the statute in order to preserve the protections afforded by the Fifth Amendment, also argues that the (B)(2) section protects "exculpatory no" false statements from prosecution. The ordinance, however, makes no reference to "exculpatory no" false statements nor to any specific constitutional or statutory privileges which underlie the exclusion. To the contrary, the ordinance provides a blanket proscription against all false statements to police officers acting within the scope of their duties. Until "exculpatory no" false statements are excluded from the purview of C.C. 2315.08(B)(2) one can only infer that the ordinance recognizes the privileges which underlie the exclusion. Due process, however, prohibits such inferences from defining criminality. (See, *e.g., Winters* v. *New York* [1948], 333 U.S. 507.)

This court is mindful as was the Court of Appeals "* * * that full cooperation with the police and other governmental employees by the citizens is essential to effective law enforcement and government operation." This opinion should not be read as an absolute prohibition against falsification ordinances. Indeed, identification of the specific scope and intent of a falsification ordinance would go far in avoiding improper infringement on constitutional privileges.[8] Through proper and responsible drafting, the myriad of ambiguities which characterize the Columbus falsification ordinance and which mandate this court's finding of unconstitutionality, could be rectified.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY and C. BROWN, JJ., concur.

LOCHER, J., concurs in the judgment.

HOLMES and KRUPANSKY, JJ., dissent.

KRUPANSKY, J., dissenting. I feel Columbus City Code 2315.08(B) is con-

---

[8] See, *e.g., Columbus* v. *Fisher* (1978), 53 Ohio St. 2d 25 [7 O.O.3d 78], wherein this court cited and discussed a proposed falsification ordinance.

stitutional as enacted, and therefore, I must respectfully dissent from the majority holding to the contrary.

At the outset in a case such as the one presented, one must note the strong presumption in favor of the constitutionality of any enactment of a governmental body. As stated in the first paragraph of the syllabus in *Xenia v. Schmidt* (1920), 101 Ohio St. 437:

"A legislative act is presumed in law to be within the constitutional power of the body making it, whether that body be a municipal or a state legislative body."

Furthermore, in *State, ex rel. Dickman, v. Defenbacher* (1955), 164 Ohio St. 142 [57 O.O. 134], paragraph one of the syllabus, this court stated:

"An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible."

Despite repeated warnings to proceed cautiously in this area, the majority has determined C.C. 2315.08 is vague and overbroad. I believe, however, a simple reading of the words of the ordinance immediately and clearly reveals otherwise. This ordinance unambiguously defines the conduct which is prohibited, *i.e., knowingly* making a *false statement* to a *police officer acting within the scope of his duties.* I fail to see anything "vague" about the meaning of these words. Surely an individual is aware of when he is voluntarily relating a misstatement to a law enforcement officer. In the instant actions, for example, one must assume defendant Jackson knew his name was not Michael Patterson, just as defendant New realized his name was not William Lewis Elkins. Furthermore, these falsifications were asserted to an individual known to be a police officer with the explicit intention of concealing the speaker's true identity from that officer. Certainly a citizen would have to be somewhat naive to assume such conduct could or should be condoned by the authorities.

In addition to the ordinance being deemed vague, it was also found to be overbroad. As stated in the Municipal Court's opinion in *Columbus v. Jackson,* and quoted by the majority:

"* * * The ordinance before the court prohibits activities that the legislative branch of government could not have intended to be made criminal. Under C.C.C. Section 2315.08(B) a person would be in violation of law if, while investigating a traffic accident, a person gave the officer unsolicited statements to the police officer:

"(1) 'It's a dry day today, officer' — when, in fact, it was raining and the defendant knew it was raining; or

"(2) 'Officer, Ohio State lost today' — when, in fact, the defendant knew that Ohio State had won today."

While recognizing the well-accepted principles that courts will liberally

construe a statute to save it from constitutional infirmities and a statute susceptible of a narrowing construction will not be found to be facially overbroad, the Court of Appeals below nonetheless determined the language contained in C.C. 2315.08(B) to be incapable of being so salvaged. I strongly disagree. A narrowing construction and liberally construing C.C. 2315.08(B) is unnecessary, one need only view the ordinance in a reasonable vein to reach an acceptable result. It is preposterous to think police officers would use C.C. 2315.08 to arrest an individual for relating an inaccurate result of a football game or reporting erroneous weather conditions. It is even more unthinkable that any court would uphold such an action. The logical interpretation of "a law enforcement officer who is acting within the scope of his duties" effectively precludes prosecution for any unsolicited comment having no significance to the matter being investigated by the officer. Furthermore, in addition to these obviously irrelevant comments which can be summarily excluded from any reasonable application of the ordinance, C.C. 2315.08(B)(2) also excepts refusals to respond to inquiries and statements protected by a constitutional or statutory privilege from the scope of the ordinance. Therefore, combining a realistic interpretation of C.C. 2315.08(B) with the exclusions found in subsection (B)(2) of the ordinance results in an enactment which is sufficiently precise and narrow to be valid and manageable.

Along with the fact that a reasonable reading of this ordinance indicates it is neither vague nor overbroad, another factor militates a finding that C.C. 2315.08 is constitutionally valid, *i.e.*, a comparable federal statute Section 1001, Title 18, U.S. Code, has been repeatedly upheld when assailed in a similar manner.

As set out in the majority opinion, Section 1001 provides:

"Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years or both."

Admittedly, Section 1001 may be more explicitly worded than the Columbus City Ordinance at issue, however, the import of the two is identical — the prohibition of false statements to public officials who are acting within the scope of their authority. The interest of society in ensuring officials are acting upon accurate information is a strong justification for upholding this ordinance. The following statement by Justice Harlan in *Bryson* v. *United States* (1969), 396 U.S. 64, 72, a case dealing with a conviction under Section 1001, seems equally applicable to C.C. 2315.08:

"* * * Our legal system provides methods for challenging the Government's right to ask questions — lying is not one of them. A citizen may decline

to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood.''

In sum, I feel C.C. 2315.08 is an ordinance with a legitimate and well-defined aim which unambiguously delineates the actions which it proscribes in a sufficiently limited fashion so as to constitute a valid enactment. In view of this conclusion, I would have reversed the judgment of the Court of Appeals.

HOLMES, J., concurs in the foregoing dissenting opinion.