**State v. Collier**
*[Cite as 5 AOA 382]*

*Case No. CA89-08-117*
*Butler County, (12th)*
*Decided August 27, 1990*

*John F. Holcomb, Butler County Prosecutor, Daniel J. Gattermeyer, 216 Society Bank Building, Hamilton, Ohio 45012-0515, for Plaintiff-Appellee.*

*Fred Miller, 300 Dollar Federal Building, Hamilton, Ohio 45011, for Defendant-Appellant.*

*Per Curiam.*

This cause came on to be heard upon an appeal, -transcript of the docket, journal entries and original papers from the Butler County Court of Common Pleas, transcript of proceedings, and the briefs of counsel, oral argument having been waived.

Now, therefore, the assignments of error having been fully considered are passed upon in conformity with App. R. 12(A) as follows:

This is an appeal by defendant-appellant, Toni Collier, from a conviction in the Butler County Court of Common Pleas for drug abuse.

On March 2, 1989, at approximately 11:30 p.m., officers from the Hamilton Police Department executed a search warrant at the residence of Bonita Hempill, 737 South Front Street, Hamilton, Ohio. When the officers came into the residence, appellant ran into an upstairs bedroom and hid in a closet. During a search, a police officer discovered six white tablets loose in appellant's purse. These tablets were later identified as Ritalin, a schedule II controlled substance. Upon questioning, appellant told police officers that the pills had been prescribed for her son.

On May 10, 1989, appellant was indicted for two counts of drug abuse pursuant to R.C. 2925.11(A). Count one alleged that she knowingly possessed Ritalin and count two alleged that she knowingly possessed cocaine. Immediately prior to trial, the state dismissed count two of the indictment.

A trial was held on July 5, 1989. Appellant testified that she had gone to Hemphill's residence to pick up Hemphill who was going to stay at appellant's house for a few days. While she was at the residence, the police kicked in the door and entered. She was frightened so she hid in the closet.

She also testified that the prescription drugs found loose in her purse were not in the prescription bottle because she had been robbed in the past. Therefore she left the bottle with her mother, Cora Simmons, who lived in Oxford. Simmons would bring the proper dosage of pills from Oxford to Hamilton everyday for appellant to give to her son. Simmons corroborated appellant's testimony. Testimony further revealed that the daily dosage needed was five tablets, but that when searched appellant was found in possession of six. Appellant produced a prescription bottle for Ritalin bearing her son's name but the date was torn off the bottle.

Appellant presents a single assignment of error for review regarding the trial court's failure to give a proposed special jury instruction. However, upon our review of the briefs, this court *sua sponte* raised the question of whether R.C. 2925.11 is unconstitutionally vague. R.C. 2929.11 provides that "[n]o person shall knowingly obtain, possess or use a controlled substance. *** This section does not apply to any person who obtained the controlled substance pursuant to a prescription issued by a practitioner, where the drug is in the original container in which it was dispensed to such person." Pursuant to *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St. 3d 168, we ordered the parties to submit supplemental briefs addressing this issue. After reviewing the briefs and the authorities cited, we conclude (1) that appellant's assignment of error is without merit and must be overruled, and (2) that R.C. 2925.11 is void for vagueness.

I.

We begin with a discussion of appellant's assignment of error. Appellant's proposed jury instruction was taken directly from the language of *State v. Taylor* (1987), 41 Ohio App. 3d 57. In that case, the defendant was charged with drug abuse pursuant to R.C. 2925.11 after an inventory search revealed forty-six Ritalin tab lets on his person. The matter was tried to the court on a set of facts stipulated to by the defendant and the state. The stipulations provided that a physician would testify that the defendant was a narcoleptic and that Ritalin was prescribed for him. The defendant presented a prescription bottle to the trial court and the stipulations provided that he would have testified that he removed some

tablets on the night of his arrest and placed them in aluminum foil since he was going away for the weekend. The trial court refused to consider this position an affirmative defense and found him guilty of drug abuse. The Franklin County Court of Appeals reversed, stating:

"Defendant contends, however, that strict construction of this exception to R.C. 2925.11 yields the harsh and unintended result of prosecuting legitimate prescription drug users. In defendant's view, the legislature could not have intended to make such possession a crime.

"While 'legislative intent' is usually an argument of last resort, and of little persuasive effect, under the circumstances the court concludes that defendant is correct. R.C. 1.47(C) makes clear that the legislature presumably intends a just and reasonable result when enacting a statute. Moreover, R.C. 2901.04(A) mandates that criminal statutes be strictly construed against the state and liberally construed in favor of the accused.

"Here, compliance with the dictates of those code sections requires reversal. Although it is indisputable that defendant was technically in violation of the drug abuse statute, the court finds that literal compliance with R.C. 2925.11 would be impossible. Since the statute on its face outlaws the *use* of a controlled substance, unless obtained pursuant to a prescription *and 'in the original container,'* no one could use a prescribed drug once outside the original container. Thus, literally construed, no one could take the drug, since the act of taking medicine would always require the drug to be outside the container. Obviously, such a result is not just and reasonable." (Emphasis in original.) *Id.* at 58.

The court went on to state that the proper interpretation of the statute "is one under which the court determines whether the amount of time between taking the medicine and taking it out of the container is reasonable under the circumstances," taking into account such factors as the amount of the drug needed, how frequently it must be taken, and the quantity the accused possessed. *Id.*

Appellant's proposed jury instruction incorporated the *Taylor* court's "reasonableness under the circumstances" test. The trial court, in refusing to give the instruction, stated that the instruction would require it to rewrite the statute. We are compelled to agree

with the trial court. "The generally accepted rule is that special instructions which correctly state the law pertinent to the case must be included, at least in substance, in the general charge." *State v. Mahoney* (1986), 34 Ohio App. 3d 114, 119. Nevertheless, in determining legislative intent, it is the duty of a court to give effect to the words used, not to insert words not used. *Columbus-Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125, 127. See also, *State v. Carter* (1983), 3 Ohio St. 3d 15, 16. The *Taylor* court, in the guise of interpretation, attempted to rewrite the statute. See *Bd. of Edn. v. Fulton County Budget Comm.* (1975), 41 Ohio St. 2d 147, 156. Therefore, *Taylor* does not correctly state the law and the trial court did not err in failing to give appellant's proposed jury instruction.

Nevertheless, while we do not agree with the *Taylor* court's approach, we do share its concerns regarding R.C. 2925.11. That it felt obligated to adopt such a strained construction of R.C. 2925.11 demonstrates the statute's inherent problems. Those problems, we conclude, stem from its vagueness.

## II.

We now turn to a discussion of the constitutionality of R.C. 2925.11.[1] We first note that all statutes enjoy a strong presumption of validity. Moreover, courts will liberally construe a statute in order to save it from constitutional infirmities. *State v. Tanner* (1984), 15 Ohio St. 3d 1, 2; *State v. Wear* (1984), 15 Ohio App. 3d 77, 78. Nevertheless, a court, in interpreting a statute, cannot simply rewrite it to make it constitutional. *State v. Young* (1980), 62 Ohio St. 2d 370, 374, certiorari denied (1980), 449 U.S. 905, 101 S.Ct. 281; *Wear, supra,* at 78.

We also note that where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant. "The standards for vagueness also require more precision in the criminal context, than in other situations, such as in a regulatory context." *Young, supra,* at 374.

However, "[j]ust as certain as is the presumption in favor of (a statute's constitutionality), is the fact that legislative enactments may be declared to be inoperative and void for uncertainty of meaning." *Oregan v. Lemons* (1984), 17 Ohio App. 3d 195, 196. The test for determining whether a statute is unconstitutionally vague is succinctly set forth in

*Kolender v. Lawson* (1983), 461 U.S. 352, 357, 103 S.Ct. 1855, 1858:

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." See also, *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843.

Three values support the void-for-vagueness doctrine, two of which are relevant here. First, a statute must provide fair warning to ordinary citizens so that their behavior may comport with the dictates of the statute. *Tanner, supra,* at 3. "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v.Rockford* (1972), 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99. "Impossible standards of specificity are not required. *** The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. De George* (1951), 341 U.S. 223, 231-32, 71 S.Ct. 703, 708; *State v. Reeder* (1985), 18 Ohio St. 3d 25, 26.

Second, a statute should preclude "arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints." *Tanner, supra,* at 3. Laws must provide explicit standards for those who apply them. "A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis ***." *Grayned, supra,* at 108-09, 92 S.Ct. at 2299. Although the vagueness doctrine focuses on both an actual notice to citizens and arbitrary enforcement, "the more important aspect *** 'is *** the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender, supra,* at 357-58, 103 S.Ct. at 1858, quoting *Smith v. Gaguen* (1974), 415 U.S. 566, 574, 94 S.Ct. 1242, 1247-48.

R.C. 2925.11 proscribes the act of knowingly obtaining, possessing or using controlled substances unless they are prescribed by a physician and kept in the original container in which they are dispensed. This statute seems clear at first blush, but upon closer scrutiny, it presents numerous problems. Under R.C. 2925.11, the mere possession of prescription drugs not in their original container is a criminal offense. Yet, as the court in *Taylor, supra,* aptly pointed out, the very act of taking a prescription medicine violates the statute.

As indicated by *Jordan, supra,* the test is whether the statute conveys definite warning as to the conduct proscribed when measured by *common understanding and practices.* Yet there are innumerable situations involving conduct that is innocent when measured by common understanding and practices but that falls within the sweep of this statute. It prohibits activities that the legislature could not have intended to be made criminal. See *Columbus v. New* (1982), 1 Ohio St. 3d 221, 225. For example, ordinary citizens often carry prescription medicines in pillboxes to avoid having to carry a bulky prescription bottle. If they take several prescription medicines, they might place all their medicine for the day or the week in a single container for convenience. Elderly persons who may have difficulty opening safety caps or remembering what time to take their medicine can place medicines in special containers designed to eliminate these problems.

The ordinary citizen also knows that the legislature could not have intended to make these types of activities criminal. Yet upon reading the statute, he or she is left to speculate as to exactly what conduct the legislature intended to criminalize. Hence there is no fair warning as to what conduct is prohibited.

"This need to speculate *** is violative of due process of law, for due process requires that no individual should have to speculate, at the peril of life, liberty or property, as to the meaning of penal statutes." *New, supra,* at 226-27.

Further, and more important, is the vast potential this statute leaves for arbitrary and discriminatory enforcement. "The fact that such a broad range of activities could reasonably be deemed criminal under the current language of the [statute] *** vividly emphasizes that there are no standards governing the exercise of discretion granted by the (statute)." *New, supra,* at 225. Where the legislature provides no guidelines, "a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors and juries to pursue their personal predilections." *Kolender, supra,* at 358, 103 S.Ct. at 1858, quoting *Smith,*

386

*supra,* at 575, 94 S.Ct. at 1248. The little old lady carrying prescription medicines in her pillbox is not going to be arrested, yet alone prosecuted. The "upstanding" citizens or the "pillars of the community" will not be deprived of their liberty merely for failing to keep their prescription medicines in the original container. It is the persons on the fringes of society and other groups that "merit the displeasure" of local prosecuting officials, see *Papachristou* at 170, 92 S.Ct. at 847, that are likely to be prosecuted under vague laws, yet it is these groups that most need the protections of the due process clause.

The present case presents a prime example of the arbitrariness inherent in this statute. Because appellant was discovered in a crackhouse with loose Ritalin pills in her purse, she was arrested for drug abuse. The state did not present any evidence tending to prove that she was illegally dealing in drugs. It did present some circumstantial evidence that the drugs were being abused in some way, but not enough in our view, to prove that fact beyond a reasonable doubt. Appellant's "crime" was carrying prescription drugs for her child in something other than the original container. However, it is all too easy to envision a situation where the pillar of the community would commit the same "crime," provide a similar explanation, and yet be free from prosecution. Due process does not allow this result.

We appreciate the laudible and important goal of this statute, to prevent the abuse of prescription drugs. Nevertheless, the legislature, by using a "sledgehammer" approach, has crafted a statute that fails to satisfy the requirements of due process. It criminalizes conduct, "the legality of which cannot be determined solely by the conduct itself but must be determined by factors [of] which a person may be unaware ***." *Young, supra,* at 377. Thousands of people unknowingly violate this statute every day and the decision of who is arrested and tried is left to the discretion of police, prosecutors and juries. Such a statute cannot stand. Accordingly, we hold that R.C. 2925.11 insofar as it applies to possession or use of prescription drugs not in their original container is void for vagueness.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and appellant is discharged.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment.

Costs to be taxed in compliance with App. R. 24.

And the court being of the opinion that there were reasonable grounds for this appeal, allows no penalty.

It is further ordered that a certified copy of this Memorandum Decision and Judgment Entry shall constitute the mandate pursuant to App. R. 27.

To all of which the appellee, by its counsel, excepts.

JONES, P.J., HENDRICKSON and YOUNG, J.J., concur.

---

[1] The state, in its supplemental brief, argues that appellant waived the constitutionality issue because it was not raised in the trial court. The waiver doctrine is set forth in *State v. Awan* (1986), 22 Ohio St. 3d 120, which states that the "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore *need not* be heard for the first time on appeal." (Emphasis added.) *Id.* at syllabus. Nevertheless, the waiver doctrine announced in *Awan* is discretionary. "The holding, while rejecting the claim that constitutionality is never waived, does not state that a constitutional issue first raised on appeal may never be considered." *Atkinson v. Grunman Ohio Corp.* (1988), 37 Ohio St. 3d 80, 82. Even where waiver is clear, a reviewing court may consider constitutional challenges to statutes in specific cases of plain error or where the rights and interests involved may warrant it.

*In re M.D.* (1988), 38 Ohio St. 3d 149, syllabus. We find this to be such a case. Further, we note that while appellant did not specifically raise the constitutionality issue in the trial court, her arguments and specifically her reliance on *Taylor, supra,* make the ambiguity in the statute and its due process implications apparent in the record. See *In re M.D., supra,* at 151; *Local Lodge 1297 v. Allen* (1986), 22 Ohio St. 3d 228.