[Cite as *State v. Demastry*, 193 Ohio App.3d 495, 2011-Ohio-1320.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


THE STATE OF OHIO,

      Appellee,

v.

DeMASTRY

      Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Sheila G. Farmer, J.
Hon. Patricia A. Delaney, J.


Case No. 10-CA-13

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Case No. 09CR128 |
| JUDGMENT: | Affirmed in part; Reversed in part, and Remanded |
| DATE OF JUDGMENT ENTRY: | March 17, 2011 |
| APPEARANCES: | |
| Gregg Marx, for appellee. | Scott P. Wood, for appellant. |

HOFFMAN, Presiding Judge.

{¶1} On April 9, 2009, the Fairfield County Grand Jury indicted appellant, Caitlin DeMastry, on one count of aggravated vehicular homicide in violation of R.C. 2903.06 and one count of involuntary manslaughter in violation of R.C. 2903.04, the predicate offense(s) being operating a motor vehicle while under the influence of alcohol and/or driving while under suspension. Appellant was also indicted on one count of tampering with evidence in violation of R.C. 2921.12. The charges arose from an incident when appellant struck and killed a pedestrian, Charles Cain Jr., while she was operating a motor vehicle. Immediately following the accident, appellant told a 9-1-1 dispatcher that her "designated driver," Jeffrey Davis, was operating the motor vehicle. Davis was in fact a passenger in the vehicle.

{¶2} On January 7, 2010, appellant filed a motion to dismiss the tampering count. The trial court denied the motion.

{¶3} A jury trial commenced on January 12, 2010. At the conclusion of the state's case-in-chief, appellant moved for acquittal pursuant to Crim.R. 29. The motion was denied. The jury found appellant not guilty of the aggravated-vehicular-homicide count, but guilty of the involuntary-manslaughter count. The jury specifically found that the state did not prove beyond a reasonable doubt that at the time of the incident, appellant was operating her motor vehicle while under the influence of alcohol. The jury also found appellant guilty of tampering with evidence.

{¶4} On January 27, 2010, appellant filed a postverdict motion for acquittal pursuant to Crim.R. 29 as to the involuntary-manslaughter count. By entry filed March 9, 2010, the trial court denied the motion.

{¶5} By judgment entry filed March 18, 2010, the trial court sentenced appellant to four years on each count, to be served consecutively.

{¶6} Appellant filed an appeal, and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶7} "The trial court erred in overruling appellant's motion to dismiss count three of the indictment prior to trial."

II

{¶8} "The trial court erred in overruling appellant's motion for acquittal as to count three of the indictment and there was insufficient evidence to support a conviction for count three of the indictment."

III

{¶9} "The trial court erred in overruling appellant's motion for acquittal as to the driving under suspension charge, as the predicate offense to count two."

IV

{¶10} "The trial court erred in overruling appellant's post-verdict motion for acquittal as to count two of the indictment."

V

{¶11} "The trial court's imposition of consecutive sentences was contrary to law."

I, II

{¶12} These assignments of error challenge appellant's conviction of tampering with evidence in violation of R.C. 2921.12(A)(2). Appellant claims that the trial court erred in denying her motion to dismiss and her motion to acquit because there was insufficient evidence to support a conviction. We disagree.

{¶13} Tampering with evidence as defined in R.C. 2921.12(A)(2) states the following:

{¶14} "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

{¶15} "(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."

{¶16} With regard to the tampering-with-evidence charge, the bill of particulars filed November 25, 2009, states the following:

{¶17} "[I]t is alleged that, the Defendant, on or about the 22nd day of February, 2009, at the County of Fairfield, State of Ohio, knowing that an official proceeding or investigation was in progress or about to be or likely to be instituted, unlawfully, did make, present or use a record, document or thing to-wit: a 911 call placed at 3:28 a.m. on February 22, 2009, knowing it to be false with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation, in violation of §2921.12(A)(2) of the Ohio Revised Code."

{¶18} Appellant argues that a more specific criminal statute, R.C. 2921.13(A)(3) (falsification) and/or R.C. 2921.31(A) (obstructing official business), takes precedence over the general criminal prohibition of R.C. 2921.12(A)(2). Those sections state the following:

{¶19} R.C. 2921.13 states:

{¶20} "(A) No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:

{¶21} "(3) The statement is made with purpose to mislead a public official in performing the public official's official function."

{¶22} R.C. 2921.31 states:

{¶23} "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶24} Appellant argues that these statutes are more specific by definition than the tampering-with-evidence statute. Falsification requires a false statement to a public official with the purpose to mislead. Obstruction of official business requires purpose to prevent, obstruct, or delay an official duty and "any act" that hampers or impedes an official duty. Appellant argues that either or both of these specific legislative statutes prevail over the general statute of tampering with evidence, citing *State v. Conyers* (1999), 87 Ohio St. 3d 246, 248, in support.

{¶25} Appellant argues that the more specific statute of falsification and/or obstructing official business applied to her conduct; therefore, the trial court should have dismissed the tampering-with-evidence count.

{¶26} It is undisputed in this case that the conduct alleged was appellant's making false statements in her 9-1-1 call for the purpose of misleading the police in their investigation of the incident. Appellant told the 9-1-1 dispatcher that Davis, her "designated driver," struck Cain.

{¶27} In *State v. Lazzaro* (1996), 76 Ohio St.3d 261, 266, the Supreme Court of Ohio held the following:

{¶28} "The General Assembly has adopted legislation intended to discourage individuals from purposely giving false information that hinders public officials in the performance of their duties. Complete and honest cooperation with the law enforcement process by all citizens is essential to the effective operation of the justice system. *Columbus v. New* (1982), 1 Ohio St.3d 221, 227, 1 OBR 244, 249, 438 N.E.2d 1155, 1160. Therefore, we hold that the making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of R.C. 2921.13(A)(3) and 2921.31(A). Our decisions in *Columbus v. Fisher* and *Dayton v. Rogers* are hereby overruled."

{¶29} We find that neither falsification (R.C. 2921.13(A)(3)) nor obstructing official business (R.C. 2921.31(A)) is a specific provision entitled to take precedence over tampering with evidence (R.C. 2921.12(A)(2)). Unlike the statute under review in *State v. Volpe* (1988), 38 Ohio St.3d 191, dealing specifically with a gambling device

(R.C. 2915.02), we find neither falsification nor obstructing official business similarly so specific.

{¶30} It is undisputed that appellant purposely lied to the 9-1-1 dispatcher when she stated that her designated driver struck a pedestrian. The question is whether this conduct constitutes falsification, obstructing official business, and/or tampering with evidence.

{¶31} Appellee contends that the phrase "to make" in the tampering-with-evidence statute can be equated to purposely calling 9-1-1 and knowingly setting up a defense or protection for appellant to shield her from prosecution or culpability. It is arguable that in today's society, where 9-1-1 tapes are heard in the media and are freely used at trial, appellant's actions could be classified as purposely setting up a defense for oneself or purposely leading the investigation toward another. However, the very same argument applies equally to the charge of falsification or obstructing official business.

{¶32} Appellant argues that the 9-1-1 call to the dispatcher did not constitute "making a record." We disagree. In today's modern world, every tweet, e-mail, text message, or phone call to 9-1-1 is the "making of a record." Clearly appellant's 9-1-1 call caused a record to be made. We therefore conclude that making a purposely false statement to a 9-1-1 dispatcher is within the statutory definition of R.C. 2921.12(A).

{¶33} Upon review, we find that the trial court did not err in denying appellant's motion to dismiss and motion for acquittal.

{¶34} Assignments of error I and II are denied.

III

{¶35} Appellant claims that the trial court erred in denying her motion for acquittal on the driving-while-under-suspension charge as a predicate offense because the state failed to establish that she was properly notified of her driver's-license suspension. Appellant claims that there was insufficient evidence to establish that she had actual or constructive knowledge of the suspension. We disagree.

{¶36} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether that evidence, if believed, would support a conviction. *State v. Jenks* (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307.

{¶37} Appellant argues that the suspension notice was not sent out until four days prior to the incident and that it was returned "as not deliverable as addressed. They were unable to forward it, so it was returned." Appellant relies on *State v. Walker,* Stark App. No. 2009CA00091, 2010-Ohio-3043, in which this court held the following at ¶39:

{¶38} "It is readily clear that Appellant was not notified that his driver's license was suspended by the BMV at the time he was charged with the offense. Notice of the suspension was not complete until the BMV deposited the notice of suspension in the mail on November 19, 2008. OAC 4501:1-10-02(E); see also, *State v. Heiney*, 11th Dist. No. 2006-P-0074, 2007-Ohio-1200, ¶16. As such, the State did not present sufficient evidence for a jury to find appellant guilty of driving under suspension beyond

a reasonable doubt. In addition, due process was not satisfied as Appellant was not given notice of the suspension by the BMV until after being charged."

{¶39} However, we note that during the trial, Lancaster Police Officer Matthew Ream testified that appellant readily admitted that her license was suspended:

{¶40} "Q. Did you ask her who the car belonged to?

{¶41} "A. I did.

{¶42} "Q. And what did she say?

{¶43} "A. She stated that it was her vehicle, but she immediately replied — or also stated that she wasn't driving, that she's under suspension, and she had a designated driver, and that she's drunk.

{¶44} "* * *

{¶45} "Q. Did you hear Ms. DeMastry say anything else other than what you've already told us?

{¶46} "A. I can't remember any quotes. I do know that she made the statement twice that I heard, where she stated she was under suspension and she was drunk. I heard her state one time that she had a designated driver. Besides that, I can't say. Most of the time I spent there, with the exception of maybe the first ten minutes, was with Mr. Davis."

{¶47} We find these admissions, coupled with the certified records from the Bureau of Motor Vehicles, to be sufficient evidence to establish the offense of driving while under suspension.

{¶48} Upon review, we find that the trial court did not err in denying appellant's motion for acquittal on the driving-while-under-suspension charge.

{¶49} Assignment of error III is denied.

IV

{¶50} Appellant claims that her conviction for involuntary manslaughter with the predicate misdemeanor offense of driving while under suspension was unlawful; therefore, the trial court erred in denying her postverdict motion for acquittal. We agree.

{¶51} Crim.R. 29 governs motion for acquittal. Subsection (A) states the following:

{¶52} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

{¶53} The standard to be employed by a trial court in determining a Crim.R. 29 motion is set out in *State v. Bridgeman* (1978), 55 Ohio St.2d 261, syllabus:

{¶54} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

{¶55} R.C. 2903.04 governs involuntary manslaughter. Subsection (B) states the following:

{¶56} "(B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or

attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV of the Revised Code that is a minor misdemeanor."

{¶57} The predicate offenses charged were operating a motor vehicle while under the influence of alcohol and/or driving while under suspension. The jury specifically found that the state did not prove beyond a reasonable doubt that at the time of the incident, appellant was operating her motor vehicle while under the influence of alcohol; therefore, the only remaining predicate offense necessarily found in this case was driving while under suspension. We note that the trial court instructed the jury on "proximate result" as follows:

{¶58} "Proximate result is a result which occurs from a proximate cause, which is defined as an act or failure to act, which, in a natural and continuous sequence, directly produced the death of Charles Cain, Jr., and without which it would not have occurred."

{¶59} As discussed in assignment of error III, appellant admitted to having a suspended license. Appellant's passenger, Davis, testified that appellant was the operator of the vehicle that struck and killed Cain.

{¶60} While there can be more than one proximate cause, we find that Cain's death was not a proximate result of appellant's status of driving while under suspension. To that extent, I agree with our brethren from the First District (*State v. Jodrey* (Apr. 10,

1985), 1st Dist. No. C-840406, 1985 WL 6740), the Fourth District (*State v. Frommer* (Dec. 19, 1985), 4th Dist. no. 577,1985 WL 17494), the Sixth District (*State v. Hamrick* (Dec. 19, 1997), 6th Dist. No. L-96-059, 1997 WL 796455), and the Eleventh District (*State v. Hatfield*, Ashtabula App. No. 2006-A-0033, 2007-Ohio-7130). I agree with the underlying rationale of those decisions that the act of driving under suspension is not relevant to the quality of driving, and therefore, it is not relevant to causation.

{¶61} Appellant's fourth assignment of error is sustained.

V

{¶62} Appellant claims that the imposition of consecutive sentences was contrary to law.

{¶63} In light of our disposition of appellant's fourth assignment of error, we overrule this assignment of error as moot.

{¶64} The judgment of the Court of Common Pleas of Fairfield County, Ohio is affirmed in part and reversed in part.

Judgment affirmed in part

and reversed in part.

DELANEY, J. concurs separately.

FARMER, J. concurs in part and dissents in part.

_____

DELANEY, Judge, concurring.

{¶65} I concur in Judge Hoffman's opinion in regard to the ultimate disposition of appellant's assignments of error. However, I concur separately as to the resolution of assignment of error IV.

{¶66} I agree with Judge Hoffman's conclusion in ¶60 that Cain's tragic demise was not a proximate result of appellant's status of driving under suspension. I disagree that as a matter of law, the act of driving under suspension is irrelevant to causation. Rather, I reach the same conclusion as Judge Hoffman by examining this issue under a sufficiency-of-evidence standard pursuant to Crim.R. 29.

{¶67} While the legislature amended R.C. 2903.04(B) to include minor-misdemeanor offenses as predicate offenses to the charge of involuntary manslaughter, the state had the burden of proving beyond a reasonable doubt that Cain's death proximately resulted from appellant's commission of the minor misdemeanor, which in this particular case was driving under suspension. See *Jackson v. State* (1920), 101 Ohio St. 152, 127 N.E. 870, paragraph one of the syllabus.

{¶68} "The term 'proximate result' was used by the General Assembly to refine and limit the verb 'cause'. * * * Under the statute, defendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct; he will be held responsible for consequences which are direct, normal, and reasonably inevitable – as opposed to extraordinary or surprising – when viewed in the light of ordinary experience. In this sense, then 'proximate result' bears a resemblance to the concept of 'proximate cause' in that defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of the risk created by his conduct. Here, that means that death reasonably could be anticipated by an ordinary prudent person as likely to result under these or similar circumstances. * * *." *State v. Losey* (1985) 23 Ohio App.3d 93, 95, 491 N.E.2d 379.

**{¶69}** Upon review of the evidence adduced at trial, I conclude that the state failed to establish a sufficient nexus between appellant's suspension and the death of Cain. When viewed in light of ordinary experience, the evidence presented in this case would not have led the average mind to conclude that a fatal consequence was within the foreseeable scope of risk created by a drivers'-license suspension. I find the reasoning of our brethren in the First Appellate District in *State v. Jodrey*, Hamilton App. No. C-840406, 1985 WL 6740, to be persuasive on this issue. In *Jodrey,* the court reversed a conviction for involuntary manslaughter under similar circumstances. The court stated:

**{¶70}** "We are not prepared to find that such an unintentional death as occurred in the matter sub judice while the appellant was under a driving suspension (that is, not legally permitted to drive such a motor vehicle as he was operating when Ackermann was killed) would naturally, logically and proximately result from the commission of driving under suspension. Moreover, the unlawful act of driving under suspension would not reasonably be anticipated by an ordinarily prudent person as likely to result in such killing as occurred here. The operator license of citizens is revoked countless numbers of times daily throughout this state for innumerable traffic offenses of differing degrees of seriousness and for different periods of time, some as short as several days. When the suspension – court or administratively imposed – terminates, the driver in most cases resumes the operation of a motor vehicle without any testing. It is difficult to imagine any real difference between one's vehicle operation skills while under suspension and immediately after the suspension is terminated. We cannot find that

the driving under suspension is the proximate cause of a death that occurs when a person drives while under suspension, as reprehensible as that activity certainly is."

{¶71} While the state strenuously argues that appellant, in addition to driving with a suspended license, was drunk and using a cell phone near the time of the accident, the jury in this case specifically found that the state failed to establish beyond a reasonable doubt that appellant was *committing* or *attempting* the operation of a motor vehicle while under the influence of alcohol (additional finding as to Count two); nor was cell-phone use a proscribed act at the time of the accident. Again, it must be proven by the state beyond a reasonable doubt that the underlying unlawful act (here, suspension) was the direct and proximate cause of the death. I find that the state failed to present sufficient evidence on this issue and the involuntary manslaughter conviction must be vacated.

————————————

FARMER, Judge, dissents.

{¶72} I respectfully dissent from the disposition of assignment of error IV regarding appellant's postverdict motion for acquittal pursuant to Crim.R. 29.

{¶73} It is axiomatic that there can be more than one proximate cause. It is undisputed that by appellant's admissions, she knew that her driver's license was suspended. If the jury was convinced that appellant was driving, the driving occurred while she was under suspension, and her operation of the vehicle was a proximate cause of the death, the predicate offense was met under R.C. 2903.04(B).

{¶74} The Ohio General Assembly addressed matters concerning the involuntary-manslaughter predicate-offense issue after *State v. Collins* (1993), 67 Ohio

St.3d 115.  See also *State v. Weitbrecht* (1999), 86 Ohio St.3d 368.  In its collective wisdom, the General Assembly chose not to distinguish between status and nonstatus offenses, which it could have done explicitly in the amendment.

{¶75}  Without such guidance, I am loath to rewrite or amend the statute.  It is clearly not within the province of the courts of Ohio.  *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, paragraph three of the syllabus, following *Columbus-Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125; *State ex rel. Carmean v. Bd. of Edn.* (1960), 170 Ohio St. 415.

{¶76}  I would find that the trial court did not err in denying appellant's postverdict Crim.R. 29 motion to acquit.

_____