[Cite as *State v. Groves*, 2014-Ohio-4337.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-13-065

       Appellee                             Trial Court No. 2012CR0065

v.

Patricia Groves                             **DECISION AND JUDGMENT**

       Appellant                             Decided:  September 26, 2014

* * * * *

Paul Dobson, Wood County Prosecuting Attorney, and Aram M. Ohanian
and David T. Harold, Assistant Prosecuting Attorneys, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**JENSEN, J.**

{¶ 1} Appellant, Patricia L. Groves, appeals the judgment entered in the Wood

County Court of Common Pleas after a jury found her guilty of aggravated arson and

insurance fraud.  The trial court sentenced appellant to 36 months in the Ohio Department

of Rehabilitation and Corrections for aggravated arson, in violation of R.C.

2909.02(A)(1), a felony of the first degree, and imposed five years of mandatory post release control. The trial court sentenced appellant to 11 months for insurance fraud, in violation of R.C. 2913.47(B)(1)(c), a felony of the fifth degree, and imposed three years of discretionary post release control. The sentences were ordered to run consecutively. The trial court further ordered appellant to pay restitution to the state of Ohio in the amount of $2,035.65.

{¶ 2} Upon consideration of the following assignments of error, we affirm in part, reverse in part, and remand for resentencing.

I. The trial court erred to the prejudice of Appellant by allowing the state to introduce hearsay evidence at trial.

II. The trial court erred to the prejudice of Appellant by allowing evidence to be presented in a manner that was unfairly prejudicial.

III. Appellant received ineffective assistance of counsel in violation of her rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Constitution of the State of Ohio.

IV. The trial court erred to the prejudice of Appellant by imposing consecutive sentences without making judicial findings under R.C. 2929.14(C)(4).

**First Assignment of Error**

{¶ 3} In her first assignment of error, appellant argues her convictions should be reversed because four statements made during the trial were inadmissible hearsay and should have been excluded by the trial court.

{¶ 4} The first statement involves the trial testimony of Sherry Lynn Warren. Ms. Warren explained to the jury that she called appellant – her employer and owner of the building – to inform her that she smelled kerosene when she reported for work on December 19, 2011. The jury then heard the following testimony:

Q. So what did you do at that point?

A. I went to my desk and got my books and stuff like I normally do.

Q. You went straight across to the manager's office and got your books?

A. Right.

Q. Anybody else show up at that point?

A. Shortly afterwards Christine Johnson came in.

Q. Okay. Who is Christine?

A. She is one of the workers, the housecleaner. And then Tammy and Sheryl, two other girls came in right after that, too.

Q. So describe for me what happened next?

A. When Tammy came in she yelled, "What the hell is that smell?"

Trial counsel objected to Ms. Warren's testimony as improper hearsay. The trial court overruled counsel's objection.

{¶ 5} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). In turn, a "statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid. R. 801(A). In general, hearsay is not admissible. Evid.R. 802.

{¶ 6} Ms. Warren's testimony that an employee reporting to work inquired as to the source of a smell in the office did not contain an "assertion" by the employee and thus is not hearsay. *See State v. Stojetz*, 84 Ohio St.3d 452, 463, 705 N.E.2d 329 (1999). The employee's words formed, and were intended as, a question, not a statement or assertion. Thus, the trial court did not err in ruling that the statement was admissible.

{¶ 7} The second statement occurred when Ms. Warren was asked about the building's alarm system after Ms. Warren testified that she found it unusual that the alarm did not beep when she arrived at the office on Monday, December 19, 2011.

> Q. Now, on the 19th in between the first and second fire, do you remember doing any investigation as to alarms?
>
> A. I called Guardian Alarm and told them that it wasn't set, and they couldn't find what the cause was and they told me that the last time * * * that the last entrance that was made was on Saturday.
>
> Q. Now were they able to reset the alarm?

A. No.

Trial counsel objected to Ms. Warren's testimony as improper hearsay. The trial court overruled counsel's objection. The hearsay rule does not apply when an out-of-court statement is offered for the purpose other than the truth of the matter asserted. *State v. Lewis*, 22 Ohio St.2d 125, 132, 258 N.E.2d 445 (1970). One such situation is when an out-of-court statement is introduced to explain the subsequent actions taken by witnesses. *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). The state argues the testimony was not being offered to prove the truth of the matter asserted, i.e., that the alarm company could not pinpoint the cause for the defect. Rather, the testimony demonstrates what Ms. Warren did after she determined that the alarm was not working when she arrived at the office on January 19, 2011. The state further argues that even if this court were to construe the evidence as inadmissible hearsay, its admittance is non-prejudicial because a representative from Guardian Alarm later testified about the information revealed during Ms. Warren's testimony. Upon review of the record, we conclude the evidence was not being offered for its truth but to explain Ms. Warren's actions. As such, the trial court did not err in ruling that the statement was admissible.

{¶ 8} The third statement occurred during the direct examination of Christine Mary Johnson when the following exchange took place:

Q. Describe for me Monday morning, that would be December 19th.

5.

A.  Monday, woke up, got my daughter ready for school, out the door she went, got my son up, fed him breakfast, called Sheri on her cell phone, called her at the office and left her a message.   Came in, walked in through the front door of the office and it smelled like burning wires or rubber, it just had a funny smell like something was burnt.  I asked Sheri, I'm like, "What is that smell?"  She's like, "I don't know."  And she had just got there and I showed up probably about three minutes after Sheri got there, maybe five minutes after.  So she goes in the kitchen to make coffee and I am grabbing my paperwork and she's like, "Oh, my god, Chrissy come here."  So I run into the kitchen and that is when we seen the kitchen, which there was the scorch marks, the burnt cardboard paper or whatever on the stove and everything, and Sheri's immediate reaction is she's calling Patty.  So she calls Patty, gets ahold of Patty, and she tells Patty what happened.  In the meantime, I'm taking pictures with my phone so I can send to Patty so she can see what is going on.

Q.  What are you taking pictures of?

A.  I am taking pictures of the well, the stove, the cardboard that was burnt on there, then the garage area because there was a burnt roll of string, then a piece of burnt string, then there was a big cardboard box and it smelled – it smelled like kerosene to me –

Q.  Okay.

A. -- or a type of something like a gasoline, kerosene or whatever, and it had like the little residue or whatever when it soaked into the cardboard, and I was taking pictures of that and everything so that I can send them over to her so that while Sheri is talking to her she can see what we are talking about. Well, I only heard Sheri's end of the conversation, I didn't hear Patty's end of the conversation but, she must have asked who was there with her because I heard Sheri say, "Well, Chrissy is here," and then I heard her say, "Chrissy is taking pictures."

Trial counsel objected. The state asserted that the testimony was not being introduced to prove the truth of the matter asserted, i.e., that Christine Johnson was at the office taking pictures. Rather, the testimony was offered to show course of conduct. We agree. The trial court did not err in ruling that the statements were admissible.

{¶ 9} The fourth statement occurred later in Johnson's testimony. The state inquired about the morning of December 20, 2011. Johnson answered, over objection, that after finding out about the fire, she called Sheri Warren, stating "'What the heck is going on?' And she's like 'did you see it?' And I'm like, 'Yeah.'" Again, a "statement" is defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid. R. 801(A). Ms. Johnson's testimony that Ms. Warren inquired as to whether she saw the coverage of the fire on the news did not contain an assertion and thus is not hearsay. Thus, the trial court did not err in ruling the statement was admissible.

7.

{¶ 10} For the foregoing reasons, appellant's first assignment of error is not well-taken.

**Second Assignment of Error**

{¶ 11} In her second assignment of error, appellant contends she was unfairly prejudiced when the prosecutor left a photograph of a burned stove projected on the projector's screen for several minutes after the photograph was identified and authenticated. The state, in its response, argues that any delay in removing the photograph was not prejudicial because the defendant never disputed the fact the fire was intentionally started. Upon our review of the record, we find the trial court did not err when it determined that appellant was not unfairly prejudiced by the length of time the exhibit was displayed on the screen. Appellant's second assignment of error is not well-taken.

**Third Assignment of Error**

{¶ 12} In her third assignment of error, appellant contends that she was denied the effective assistance of trial counsel.

{¶ 13} In order to establish ineffective assistance of counsel, an appellant must satisfy the two-part test created in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must show counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that but for counsel's error, the result of the proceedings would have been different. *Id*. at 687-688, 696. "Judicial scrutiny of counsel's performance must be highly deferential. * * * [A]

8.

court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689. Furthermore, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *Id*. at 143, quoting *Strickland* at 697.

{¶ 14} First, appellant argues that her trial counsel was ineffective for failing to object to the introduction of testimony that appellant had been previously been incarcerated. The reference to incarceration was elicited during trial counsel's cross-examination of appellant's former employee, Sheri Lynn Warren:

Q. Miss Warren, in January of 2012, did you send one of the other workers from the business, a Miss Adkins, to the bank to try and cash a check?

A. Yes, I did.

Q. In fact, the bank declined to cash that check, is that correct?

A. Yes,

Q. And at the time that occurred you did not have cosigning privileges on the account, is that correct?

A. No, I didn't. But, that check was because Patty was in jail and needed money, that check was for her.

9.

It is clear from our review of the record that trial counsel made an apparent strategic decision in eliciting such testimony from Ms. Warren. This court must presume counsel's conduct falls within the wide range of reasonable professional assistance and is the product of sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. We find, therefore, appellant was not denied the effective assistance of counsel. Further, we cannot conclude that a reasonable probability exists that the result of the proceedings would have been different had counsel objected to Ms. Warren's testimony.

{¶ 15} Second, appellant argues that trial counsel was ineffective for failing to object to certain hearsay testimony during the direct examination of attorney Peter Rost. Mr. Rost testified as to his understanding of appellant's relationship with his client, James Holtgrieve. Mr. Rost indicated that Holtgrieve had received information from one of appellant's employees that appellant thought Holtgrieve was going to burn her building down. Upon our review of the record, we cannot conclude that a reasonable probability exists that the result of the proceedings would have been different had trial counsel objected to Mr. Rost's testimony.

{¶ 16} Finally, appellant asserts that her trial counsel was ineffective when she failed to cross-examine Joanne Swope. Ms. Swope testified that she works as a custodian at a school near appellant's building. On the morning of the fire, Ms. Swope was in the parking lot of the school when appellant pulled up in her car. Ms. Swope explained:

10.

And she slowed down and I stopped and asked if I could help her. She looked kind of befuddled, she had curlers in her hair and a robe on. I said, "What is the problem?" And she says, "I think somebody is going to set my building on fire, I had fired somebody." I said, "Well, why don't you go across the street to the police station and warn them," and then I continued on into my building.

When asked what the appellant did next, Ms. Swope explained, "She just looked at me and drove away."

{¶ 17} "Generally, whether to cross-examine witnesses and the extent of that cross-examination is a tactical matter committed by the discretion of trial counsel and cannot form the basis for an ineffective assistance of counsel claim." *State v. Ellison*, 6th Dist. Lucas No. L-02-1292, 2003-Ohio-6748, ¶ 33, citing *State v Flors*, 38 Ohio App.3d 133, 139, 528 N.E.2d 950 (8th Dist.1987). Looking at all the circumstances of this case, we cannot, in retrospect, state that trial counsel's performance fell below an objective standard of reasonable representation when she made the tactical decision not to cross-examine Ms. Swope. Further, we cannot say that but for counsel's decision, a reasonable probability exists that the result of the proceedings would have been different.

{¶ 18} For the foregoing reasons, appellant's third assignment of error is found not well-taken.

11.

## Fourth Assignment of Error

{¶ 19} In her fourth assignment of error, appellant contends that the trial court did not make the required findings under R.C. 2929.14(C)(4) before sentencing her to consecutive sentences.

{¶ 20} We review consecutive sentences using the standard of review set forth in R.C. 2953.08. *State v. Jude*, 6th Dist. Lucas No. L-13-1185, 2014-Ohio-3441, ¶ 10, citing *State v. Banks*, 6th Dist. Lucas No. L-13-1095, 2014-Ohio-1000, ¶ 10. R.C. 2953.08(G)(2) provides two grounds for a reviewing court to overturn the imposition of consecutive sentences: the sentence is "otherwise contrary to law," or the reviewing court clearly and convincingly finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4).

{¶ 21} Recently, in *State v. Banks*, 6th Dist. Lucas No. L-13-1095, 2014-Ohio-1000, ¶ 11-12, we explained

> R.C. 2929.14(C)(4) now requires that a trial court engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must find the sentence is necessary to protect the public from future crime or to punish the offender. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Third, the trial court must find that at least one of the following applies: (a) the offender committed one or more of the multiple offenses while the offender was

12.

awaiting trial or sentencing, while under a sanction imposed pursuant to R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflect the seriousness of the offender's conduct; or (c) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

However, the trial court is not required to recite any "magic" or "talismanic" words when imposing consecutive sentences provided it is "clear from the record that the trial court engaged in the appropriate analysis." *State v. Murrin*, 8th Dist. Cuyahoga No. 83714, 2004-Ohio-3962, ¶ 12.

{¶ 22} In its August 28, 2013 judgment entry the court indicated that it carefully reviewed "the record, all oral and written statements, the purposes and principles of sentencing as well as the seriousness and recidivism factors" when it determined appellant's sentence.

{¶ 23} The record reflects that the trial court engaged in the first step of the consecutive sentence analysis when, during the August 23, 2013 sentencing hearing, it

13.

held that consecutive sentences were necessary because "each individual sentence is not sufficient to adequately punish the offender or protect the public." Then, in its August 28, 2013 judgment entry, the trial court explained "no single term of incarceration is adequate to punish the offender or to protect the public from future crimes by Defendant."

{¶ 24} The record reflects that the trial court engaged in the second step of the consecutive sentence analysis when, during the sentencing hearing, it referenced the prosecutor's detailed statement about the seriousness of appellant's conduct in setting the early morning fire. In his statement to the court, the prosecutor indicated that appellant's actions were "incredibly dangerous." The prosecutor explained:

> We had the officer who arrived on scene first, who opened the door and could have walked into a very toxic environment. The fire officials, the first ones on the scene and then the first people in the building had to go in there on their hands and knees because of the smoke. This was a cleaning business. There were multiple chemicals, multiple things that can go wrong in a situation like that, some flammable, some not; some poisonous, some not. Sending there [sic] people in the dark into a building covered in smoke to go on their knees so they can see into a building like this, puts them in danger. And we have also civilians. This is a busy area in Rossford. There is a Rite Aid right next door, school buildings just down the road, the danger in this type of situation is extreme. And what was the

motivation? It was money * * *. The selfish actions of Miss Groves put a lot of people in danger and ruined the livelihood of individuals or employees that worked with her. * * * Miss Groves concentrating only on Miss Groves on what she wants and not about the other people she's affected, the people she placed in danger; and the complete lack of remorse for the actions that brought her before the Court.

{¶ 25} The record does not, however, reflect whether the trial court engaged in the third step of the consecutive sentence analysis. There is nothing in the record that would support a finding that appellant committed the offenses while she was awaiting trial or sentencing, while under a community control sanction imposed pursuant to R.C. 2929.16, 2929317, or 2929.18, or while under postrelease control for a prior offense as set forth in R.C. 2929.14(C)(4)(a). While the trial court clearly considered the seriousness of the conduct leading to the aggravated arson conviction, it does not mention the insurance fraud conviction or how the harm caused by these two offenses "as part of one or more courses of conduct * * * was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflect the seriousness of the offender's conduct." *See* R.C. 2929.14(C)(4)(b). There is nothing in the record that would support a finding that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender as set forth in R.C. 2929.14(C)(4)(c).

15.

{¶ 26} Because it is clear from the sentencing transcript and judgment entry that the trial court failed to make the statutorily required findings found in R.C. 2929.14(C)(4)(a), (b), or (c), before imposing consecutive sentences, we clearly and convincingly find that appellant's sentence is contrary to law. Accordingly, appellant's fourth assignment of error is well-taken.

{¶ 27} For the reasons set forth above, the judgment of the trial court is affirmed in part, and reversed in part. This matter is remanded to the Wood County Court of Common Pleas for resentencing. The costs of this appeal are assessed to appellant and appellee equally under App.R. 24.

Judgment affirmed in part, and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.