[Cite as *State v. Jones*, 2022-Ohio-3978.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2021-P-0098 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| LYNDEN A. JONES, | |
| Defendant-Appellant. | Trial Court No. 2021 CR 00453 |

**O P I N I O N**

Decided: November 7, 2022
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Sean P. Martin*, 113 North Chestnut Street, Suite A, Jefferson, OH 44047 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Lynden A. Jones ("Mr. Jones"), appeals from the judgment of the Portage County Court of Common Pleas, which sentenced him to an aggregate nine-year prison sentence after a jury found him guilty of reckless homicide with a firearm specification and tampering with evidence.

{¶2} Mr. Jones raises seven assignments of error on appeal, in which he contends: (1) the state failed to produce sufficient evidence to sustain his convictions for reckless homicide and tampering with the evidence; (2) the state committed prosecutorial misconduct when it referred to witness intimidation he did not commit; (3) the trial court

abused its discretion by allowing the admission of testimony that he discarded clothing after the shooting, which led the jury astray in finding that he tampered with evidence; (4, 5) defense counsel was ineffective for failing to articulate any argument to sustain his Crim.R. 29(A) and (C) motions for acquittal; (6) the trial court abused its discretion by overruling defense counsel's Crim.R. 29 motions without entertaining arguments; and (7) the prosecutor impermissibly and prejudicially commented on his post-arrest silence during closing arguments.

{¶3} After a careful review of the record and pertinent law, we find Mr. Jones' assignments of error to be without merit.

{¶4} Firstly, a review of the state's evidence reveals more than sufficient evidence from which a jury could find Mr. Jones guilty of reckless homicide and tampering with evidence beyond a reasonable doubt. Mr. Jones perversely disregarded the risks associated with playing with a deadly weapon by pointing and dry firing a gun with its magazine attached at another person standing in close proximity, i.e., 2-3 feet away. Further, the state introduced evidence that Mr. Jones attempted to remove all traces of himself at the scene by removing his personal handguns, plotting to report the shooting as self-inflicted, and fleeing the scene, possibly discarding his clothing on an interstate as he drove away. Additionally, the handgun left at the scene that was linked to the bullet that tore through the victim did not have any traces of fingerprints or any DNA evidence.

{¶5} Secondly, because we find the underlying grounds of Mr. Jones' fourth, fifth, and sixth assignments of error, i.e., the sufficiency of the evidence, to be without merit, we necessarily find these assignments of error are without merit and/or moot.

2

{¶6} Thirdly, as to the allegations of prosecutorial misconduct in Mr. Jones' second assignment of error, we determine that the prosecutor legitimately questioned one of the eyewitnesses, Mr. Dickerson, who was reluctant to answer the state's subpoena, in an effort to bolster his credibility. The eyewitnesses to the shooting did not come forward until the investigation was already underway; several reported the victim shot himself; and the trial itself was emotionally charged with family and friends allegedly waiting outside of the courtroom threatening the witness. Mr. Dickerson reported being threatened by his peers the night before he testified. Even if we did find the prosecutor's questioning about what was transpiring outside the courtroom improper and confusing for the jury, Mr. Jones failed to demonstrate any prejudice, substantial or otherwise.

{¶7} Regarding his seventh assignment of error, we agree with Mr. Jones that the prosecutor's remark regarding Mr. Jones' post-arrest silence was highly improper and find it troubling that the trial court overruled defense counsel's objection and did not give a curative instruction to the jury. We determine, however, that any error is harmless since the record amply supports Mr. Jones' convictions.

{¶8} Lastly, we find Mr. Jones' third assignment of error to be without merit since the trial court did not abuse its discretion in allowing one of the detectives to testify that Mr. Jones allegedly discarded clothing on the interstate after the incident, which was never recovered, because it was neither more prejudicial nor less relevant than the testimony regarding the missing handguns and was more probative than not in determining whether Mr. Jones tampered with evidence to remove any traces of himself from the scene. Moreover, the hearsay rule does not apply when an out-of-court statement is introduced to explain the subsequent actions of a witness. *See*, *e.g.*, *State*

3

*v. Lewis*, 22 Ohio St.2d 124, 132, 258 N.E.2d 445 (1970).  Thus, the detective's testimony that he was prompted to search for the clothing along the interstate because of comments from witnesses during his investigation was not inadmissible hearsay; rather, it explained his course of action.  Further, the jury was well aware that the discarded clothing was never found, and any evidentiary value it had as far as linking Mr. Jones to the shooting was speculative.  Thus, the jury was free to weigh the credibility of such evidence.

{¶9}  Finding Mr. Jones' assignment of error to be without merit, the judgment of the Portage County Court of Common Pleas is affirmed.

### Substantive and Procedural History

{¶10}  In May 2021, a Portage County Grand Jury indicted Mr. Jones on four counts:  reckless homicide, a third-degree felony, in violation of R.C. 2903.041; using weapons while intoxicated, a first-degree misdemeanor, in violation of R.C. 2923.15; involuntary manslaughter, a third-degree felony, in violation of R.C. 2903.04; and tampering with evidence, a third-degree felony, in violation of R.C. 2921.12.  The indictment was amended a few days later to include a firearm specification on the counts of reckless homicide and involuntary manslaughter pursuant to R.C. 2929.14(D) and R.C. 2941.145.

{¶11}  The indictment arose out of a small get together of high schoolers who gathered at an apartment following a high school basketball game.  They were smoking marijuana and several of them were dry firing handguns.  The nine-millimeter handgun Mr. Jones was handling fired a live round, which struck and killed the 17-year-old victim, Dominick Anthony Diaz-Francis ("Mr. Diaz-Francis").

4

{¶12} Mr. Jones pleaded not guilty at his arraignment, and the case proceeded to a three-day jury trial.

### The Jury Trial

{¶13} The state presented the testimony of twelve witnesses, including Mr. Jones' friends that were present on the night of the shooting (with the exception of the lessee of the apartment, Dajon Rovelle Buchanan a.k.a. "DJ" ("Mr. Buchanan")): Dalvin Dickerson ("Mr. Dickerson"); Mr. Jones' cousin, Josiah Mercury aka "Joe Joe" ("Mr. Mercury"); and Anthony Clark a.k.a. "Barry" ("Mr. Clark").

### The Eyewitnesses

{¶14} Mr. Dickerson, Mr. Mercury, and Mr. Clark gave similar accounts of the night of the incident. The group had congregated at Mr. Buchanan's apartment to "hang out," which included playing videogames, smoking marijuana, and playing with handguns. Three handguns were brought out shortly after they arrived; two belonged to Mr. Jones, and one belonged to Mr. Diaz-Francis. According to Mr. Dickerson, Mr. Jones and Mr. Diaz-Francis were "cocking them back" to see which gun was the loudest and/or easiest to fire. Mr. Mercury and Mr. Clark both testified that dry firing handguns was something they did often. Dry firing a gun was described during the trial as pulling the trigger of an unloaded gun. A click is heard when the hammer of the gun falls, which in a loaded gun expels the bullet from the gun's chamber.

{¶15} Mr. Jones was dry firing the nine-millimeter handgun that belonged to Mr. Diaz-Francis. He pointed it at the victim, who was standing only a few feet away, and pulled the trigger, expelling a live round. As the chief forensic investigator for the Portage County Coroner's office testified, the bullet struck Mr. Diaz-Francis mid-chest and exited

5

out of his upper back/right shoulder.  An officer later retrieved the bullet, which was located lodged into one of the ceiling tiles.

{¶16}  Mr. Diaz-Francis collapsed in the doorway leading into the apartment bedroom.  Believing they could drive him to the hospital, Mr. Dickerson and Mr. Jones assisted the victim as far as the door of the apartment hallway.

{¶17}  The group discussed reporting the shooting as self-inflicted, and Mr. Buchanan called 911 on Mr. Clark's cell phone, reporting that the victim shot himself.  No one knew what happened to Mr. Jones' guns, but everyone except the victim and Mr. Buchanan fled the scene before emergency personnel arrived.

{¶18}  The officers who responded to the scene smelled marijuana emanating from the apartment before they entered.  They found Mr. Buchanan standing over the victim, who was lying on the floor, unresponsive, and gasping and swallowing for air.  Mr. Diaz-Francis was transported to the hospital by emergency personnel where he later died due to blood loss.

{¶19}  The only handgun recovered from the scene was Mr. Diaz-Francis' nine-millimeter handgun with the magazine still attached.  At the time, the officers were unaware other handguns had been present since they began the investigation under the assumption that Mr. Diaz-Francis shot himself.  A forensic investigator with the Ohio Bureau of Criminal Investigation examined the gun, found it operable, and confirmed that that the gun and the bullet that shot the victim had the same class characteristics.

{¶20}  Mr. Buchanan was taken into custody by Detective Duane Kaley ("Det. Kaley").  Mr. Buchanan filled out four different statement forms, reporting the shot as self-inflicted in various versions, which indicated to Det. Kaley that there were more factors to

6

consider than those initially reported. Mr. Dickerson, Mr. Clark, and Mr. Mercury eventually came forward, all reporting that Mr. Jones shot Mr. Diaz-Francis. Ultimately, Det. Kaley pieced together the events of the night of the incident and reached the conclusion that Mr. Jones shot Mr. Diaz-Francis and fled to Texas to stay with his parents. Eventually, he obtained a warrant for Mr. Jones and travelled to Texas to place him in custody.

### *Intimidation of Witnesses*

{¶21} As relevant to Mr. Jones' second assignment of error, prior to Mr. Dickerson testifying, the state noted on the record that Mr. Dickerson had been threatened by peers the previous night. During his direct examination of Mr. Dickerson, the prosecutor engaged him in the following colloquy:

{¶22} "Q. Okay. All right. Let me ask you this. Without naming names, it's been tough for you to get subpoenaed by us and have to come in here and tell the truth, would that be fair to say?

{¶23} "A. Yes.

{¶24} "Q. In fact, I was told, and I don't know if this is true or not, that even while waiting on your testimony, some of the folks you know outside the courthouse, gave you some lip, sort of challenged you verbally –

{¶25} "[Defense Counsel]: Objection.

{¶26} "The Court: Overruled.

{¶27} "Q. –beefing with you about your testimony today; is that true?

{¶28} "A. Yes.

{¶29} "Q. Okay. Um, not Lynden, to be fair to Lynden.

7

Case No. 2021-P-0098

{¶30} "A. Right.

{¶31} "Q. Folks, friends, I mean, it's an emotional time. And you sort of stood up and said, hey, I'm just going to tell the truth what happened and let the court decide what it wants to do; is that fair to say?

{¶32} "A. Yes.

{¶33} "Q. You got any reason to come in here and lie today?

{¶34} "A. No, sir.

{¶35} "* * *

{¶36} "Q. Do you feel intimidated or afraid or scared of the dudes that were threatening you outside?

{¶37} "A. No.

{¶38} "* * *

{¶39} "Q. Okay. And when I asked you what you thought happened, you told me in trial prep, you said, I thought it was an accident. I don't think he meant the gun to go off.

{¶40} "A. Right.

{¶41} "Q. That's fair to say. We're being fair to Lynden on that too. Okay. All right, Dalvin. I want to thank you for being a standup guy and having the courage to testify truthfully. [Defense counsel] will have some questions for you. He's Lynden's Attorney, and then you'll be free to go after that. If anybody does threaten you or retaliates against you for your testimony, you call the police and let us know. That is a felony to do that, okay. If somebody retaliates or threatens against you for testifying in court. All right. You shouldn't have to go through that."

8

### Tampering with Evidence

{¶42} Det. Kaley elaborated on the tampering with evidence charge for the jury. He testified that during the course of the investigation, witnesses indicated there were three guns at the apartment, only one of which was located, i.e., the gun that shot Mr. Diaz-Francis, and that Mr. Jones had taken the other two, which belonged to him. Det. Kaley further testified that during the investigation, the eyewitnesses had indicated Mr. Jones was wearing an article of clothing, potentially bloody, that he discarded on Interstate 76 following the incident. The clothing was never recovered. The trial court overruled defense counsel's objection to this testimony, and Det. Kaley further testified that "[t]here was [an] article of clothing that he had on that could have been of value to enhance the investigation." He also testified that no fingerprints or DNA were found on the gun.

### Crim.R. 29 Motions

{¶43} At the close of the state's case in chief, defense counsel made a Crim.R. 29 sufficiency of the evidence motion, arguing that there was insufficient evidence regarding each and every element of all four charges. Defense counsel inquired whether the court would allow him to go into greater detail on those arguments. The court declined and overruled the motion. Shortly after the defense rested, defense counsel renewed his Crim.R. 29 sufficiency of the evidence motion, which the court overruled.

### Closing Arguments

{¶44} As relevant to Mr. Jones' seventh assignment of error, during closing argument defense counsel remarked:

9

{¶45} "He went back to his parents' house in Austin, Texas. And from that we're going [to] perceive it as being fleeing. As if he's somehow hiding. If he's hiding someone has to be looking for you.

{¶46} "At that point, he doesn't even know that people are looking for him.

{¶47} "Now, they're going to say, well his leaving somehow creates the idea that that's tampering with evidence.

{¶48} "Again, look at the tampering with evidence charge.

{¶49} "Tampering with evidence does not say that you can't go to your parents' house.

{¶50} "It's not like he's trying to seek refuge in a monastery. It's not like he's moved to Mexico or gone to some South American countries. He didn't do any of those things.

{¶51} "And if he had done those things, it's a different charge.

{¶52} "He's charged with tampering with evidence.

{¶53} "And the government's going to use words like he was fleeing to try to plant that seed in your mind that he already had this consciousness of guilt, that's he's trying to get out of dodge, and he's trying to get out before they get him.

{¶54} "But, again, that's requiring you to put thoughts in his mind, but there's certainly no testimony, no testimony whatsoever.

{¶55} "And if they wanted to find him, if they truly wanted to get his side of the story, they could have. They chose not to. And that's why we have the case we have here today."

10

{¶56} During the state's rebuttal closing argument, the prosecutor, in turn, remarked,

{¶57} "He fled to Texas.

{¶58} "He killed Dominick, he didn't know what to do so he ran to his family.

{¶59} "And let's follow that. He doesn't know what's going on, okay.

{¶60} "All his friends know, it's all over social media, the police are talking to everybody, they're looking for him, that's well known. He eventually gets charged within a few months, it goes through the Grand Jury process. Takes even up to a year then to get him into custody.

{¶61} "He knows what's going on.

{¶62} "And if you're not sure then let's come to the big moment, right. It's your time. You meet. Hi, I'm Detective Kaley of the Ravenna Police Department. All right. Tell me about it.

{¶63} "What did he say? That's what you hear. Nothing.

{¶64} "So all much ado about he didn't even know they were looking for him. He didn't flee, he didn't – he's doing everything he can. He's moving stuff from the scene, he's throwing his clothes out the window, he's fleeing to Texas. And when the big moment comes, if what [defense counsel] is telling you is true, he would have talked if he had his chance.

{¶65} "He had his chance."

{¶66} Defense counsel moved for a mistrial due to prosecutorial misconduct, arguing that the prosecutor mentioned Mr. Jones' right not to testify. The prosecutor disagreed, contending that he was referring to defense counsel's statement that the police

11

did not try to get a statement from Mr. Jones and that Mr. Jones did not know anyone was attempting to speak with him regarding the incident.  The trial court overruled the motion, and the case proceeded to jury deliberations.

### Jury Verdict and Sentencing

**{¶67}**  The jury returned a guilty verdict on the counts of reckless homicide, with a firearm specification, and tampering with evidence.

**{¶68}**  Several weeks later at the sentencing hearing, after making consecutive sentence findings, the trial court sentenced Mr. Jones to consecutive 36-month terms of imprisonment on each count, for an aggregate prison sentence of nine years.

**{¶69}**  Mr. Jones raises seven assignments of error on appeal:

**{¶70}**  "[1.]  The State of Ohio Failed to Produce Legally Sufficient Evidence to Sustain a Conviction on Count One and Count Three.

**{¶71}**  "[2.]  [The] State of Ohio Committed Prosecutorial Misconduct When it Referred to Witness Intimidation That Was Not Committed by the Appellant.

**{¶72}**  "[3.] [The] Trial Court Abused Its Discretion By Admitting Evidence Alleging the Appellant Engaged in Tampering with Evidence.

**{¶73}**  "[4.]  Appellant received Ineffective Assistance of Counsel as Defense Counsel Failed to Articulate Any Argument to Sustain Appellant's Rule 29(A) Motion.

**{¶74}**  "[5.]  Appellant received Ineffective Assistance of Counsel as Defense Counsel Failed to Articulate Any Argument to Sustain Appellant's Rule 29(C) Motion.

**{¶75}**  "[6.]  [The] Trial Court Abused Its Discretion By Overruling Defense Counsel's Rule 29 Motions Without Entertaining Arguments.

Case No. 2021-P-0098

{¶76} "[7.] The Prosecution Impermissibly Commented on Appellant's Post Arrest Silence During Closing Arguments And Prejudiced the Appellant."

### Sufficiency of the Evidence

{¶77} In his first assignment of error, Mr. Jones contends the state failed to produce legally sufficient evidence to sustain his convictions for reckless homicide and tampering with evidence.

{¶78} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id.*

{¶79} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶80} When conducting a sufficiency of the evidence analysis, this court is to look at the actual evidence admitted at trial, both admissible and inadmissible. *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶ 34. Further, a claim of insufficient

13

evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *Id.* at ¶ 33.

### *Reckless Homicide*

**{¶81}** Mr. Jones was convicted of reckless homicide in violation of R.C. 2903.041, a third-degree felony. Pursuant to R.C. 2903.041, "[n]o person shall recklessly cause the death of another * * *." Further, "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

**{¶82}** Mr. Jones specifically takes issue with the credibility of the eyewitnesses. The credibility of the witnesses does not go to the sufficiency of the evidence but, rather, goes to the manifest weight of the evidence. *State v. Hodgson*, 2021-Ohio-4374, 182 N.E.3d 417, ¶ 93 (11th Dist.). When evaluating the *manifest weight of the evidence*, it is well-settled that when assessing the credibility of witnesses, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Cent. Motors Corp. v. Pepper Pike*, 73 Ohio St.3d 581, 581, 653 N.E.2d 639 (1995).

14

Case No. 2021-P-0098

{¶83} As our review of the facts reveals, all three eyewitnesses testified that they were smoking marijuana and that Mr. Jones and Mr. Diaz-Francis were dry firing guns, giving similar accounts of the incident both before and after the shooting. Mr. Clark was sleeping and, although Mr. Dickerson did not actually observe Mr. Jones pull the trigger, he did see the gun Mr. Jones was holding fire. Mr. Mercury testified he and Mr. Jones were looking at each other when the gun Mr. Jones was holding went off. All three saw Mr. Jones drop the gun after Mr. Diaz-Francis was shot. All three described the panic that ensued, their attempts to help the victim, and their discussions about reporting the shooting as self-inflicted. An officer identified the gun secured at the scene, which had the magazine still attached, and the Ohio BCI Investigator concluded that the bullet that tore through the victim was fired from the gun Mr. Jones was holding.

{¶84} Simply because Mr. Dickerson did not see Mr. Jones actually pull the trigger does not mean there was insufficient evidence introduced. "Circumstantial evidence and direct evidence inherently possess the same probative value * * *." *Jenks*, *supra*, at paragraph one of the syllabus. Circumstantial evidence has been defined as "testimony not grounded on actual personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Marhefka*, 2016-Ohio-7158, 71 N.E.3d 1229, ¶ 22 (11th Dist.). An inference is "'a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven.'" *Id.*, quoting *State v. Nevius*, 147 Ohio St. 263, 274, 71 N.E.2d 258 (1947). It consequently follows that "when circumstantial evidence forms the basis of a conviction, that evidence must prove collateral facts and circumstances, from which the existence of a primary fact may be

15

rationally inferred according to common experience." *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶ 34.

{¶85} As the Second District explained in *State v. Erby*, 2d Montgomery No. 27799, 2018-Ohio-3695, "a defendant may be guilty of reckless homicide for an unintentional shooting if the evidence supports a finding that he handled a firearm in a reckless manner, resulting in another person's death." *Id.* at ¶ 20; *see*, *e.g.*, *State v. English*, 10th Dist. Franklin No. 13AP-88, 2014-Ohio-89, ¶ 13; *State v. Howse*, 2012-Ohio-6106, 985 N.E.2d 246, ¶ 30-31 (9th Dist.).

{¶86} In *Erby*, the Second District found the trial court had a reasonable basis for finding that the appellant acted recklessly by "waving" what he knew to be a loaded gun within two feet of where the victim was lying on the bed, with his finger on the trigger while he was in an admittedly "hyped up" state. *Id.* at ¶ 23.

{¶87} In *English*, the appellant was sitting in the backseat of a car, holding a shot gun, playing with its hammer (part of the firing mechanism) in close proximity to several other people. *Id.* at ¶ 12. The shotgun went off, killing one of the individuals who was standing near the left-side rear door area. *Id.* at ¶ 2. The appellant argued that he did not have knowledge that the shotgun could discharge while manipulating the hammer without applying any pressure to the trigger; thus, he could not have disregarded the specific risk the gun posed to those around him. *Id.* at ¶ 9. The Ninth District determined that "while appellant may not have specifically known that the shotgun in his hands had a 'sometimes operable hammer safety,' it was clear that his actions created a risk of harm to nearby individuals and that appellant perversely disregarded that risk by continuing to play with the shotgun's hammer mechanism." *Id.* at ¶ 12.

16

**{¶88}** Similarly, in this case, it is obvious Mr. Jones perversely disregarded the risks associated with playing with a deadly weapon. As the Supreme Court of Ohio recognized in *State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025 (1982), "a firearm is an inherently dangerous instrumentality, the use of which is reasonably likely to produce death." *Id.* at 270.

**{¶89}** We cannot say under the circumstances of this case that the state failed to introduce sufficient evidence from which a jury could find beyond a reasonable doubt that Mr. Jones recklessly caused the death of another by pointing and dry firing a gun with its magazine attached at another person standing several feet away.

### *Tampering with Evidence*

**{¶90}** Mr. Jones was convicted of one count of tampering with evidence in violation of R.C. 2921.12, which states:

**{¶91}** "(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

**{¶92}** "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;

**{¶93}** "(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

**{¶94}** "(B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree."

17

Case No. 2021-P-0098

{¶95} Mr. Jones contends the evidence was insufficient to support a tampering with evidence conviction because of the eyewitness accounts, i.e., Mr. Dickerson could not account for what happened to the other handguns and did not see who removed them from the scene, and Mr. Mercury could not recollect what happened to the handguns but explicitly testified that Mr. Jones was not in possession of them after the shooting.

{¶96} As we already noted, "[c]ircumstantial evidence can have the same probative value as direct evidence." *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991). Simply because several of the eyewitnesses did not know what happened to the handguns after the shooting occurred is irrelevant. All three eyewitnesses testified that the handguns were present. Most fundamentally, focusing simply on exactly what happened to the handguns after the shooting occurred is a red herring. It is what their absence indicates, combined with eyewitness testimony that they were there, Mr. Jones' proposition to his friends to report the shooting as self-inflicted, and the false reports, i.e., Mr. Dickerson's 911 call reporting the shooting as a self-inflicted and Mr. Buchanan's four false witness statements to the police immediately following the incident, that is indicative that evidence was tampered with to mislead the investigation. *See, e.g., State v. DeMastry*, 193 Ohio App.3d 495, 2011-Ohio-1320, 952 N.E.2d 1151 (5th Dist.) (purposely making a false statement to a 911 dispatcher is within the statutory definition of tampering with evidence).

{¶97} Quite simply, Mr. Jones attempted to remove all traces of himself from the scene with the aid of his cohorts. He discussed reporting the shooting as a self-shooting with all of those present, left the scene of the crime, and discarded his clothing on the highway. The handgun that remained at the scene contained no fingerprints, and if it

18

were not for others eventually coming forward, the truth of the shooting may not have come to light.

{¶98} Thus, the state presented considerable circumstantial evidence that Mr. Jones disposed of his handguns with the intent to conceal them to remove any evidence of himself at the scene of the incident and that he was more than cognizant that an investigation was likely to ensue. Moreover, and most especially under these circumstances where the seriousness of the injury and the manner it was inflicted is obvious, "'[w]hether [the] defendant had actual notice of an impending investigation is irrelevant. When an offender commits an unmistakable crime, the offender has constructive knowledge of an impending investigation of the crime committed.'" *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 39 (11th Dist.), quoting *State v. Schmitz*, 10th Dist. Franklin No. 05AP-200, 2005-Ohio-6617, ¶ 17.

{¶99} We cannot say under these circumstances that the evidence was insufficient to sustain a conviction for tampering with evidence beyond a reasonable doubt.

{¶100} Mr. Jones' first assignment of error is overruled.

### Crim.R. 29 Sufficiency of the Evidence Motions

{¶101} In his fourth and fifth assignments of error, Mr. Jones contends his counsel was ineffective for failing to articulate any arguments to sustain his Crim.R. 29(A) motion at the close of the state's case in chief and his Crim.R. 29(C) motion once the defense rested. In his sixth assignment of error, Mr. Jones contends the trial court abused its discretion by overruling defense counsel's Crim.R. 29 motions without entertaining arguments.

19

Case No. 2021-P-0098

{¶102} Because we find Mr. Jones' first assignment of error challenging the sufficiency of the evidence to be without merit, Mr. Jones' fourth, fifth, and sixth assignments of error are necessarily without merit and/or moot. *See State v. Henderson*, 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (1988) ("The grounds which underlie each of these instances have already been separately addressed and found to be without merit. Accordingly, we need not address the counsel-performance component of these grounds."); *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, 176 N.E.3d 720, ¶ 26 ("[A]n assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court.")

{¶103} Mr. Jones' fourth, fifth, and sixth assignments of error are overruled.

### Prosecutorial Misconduct

{¶104} In his second and seventh assignments of error, Mr. Jones alleges prosecutorial misconduct. More specifically, in his second assignment of error, he contends the prosecutor impermissibly questioned Mr. Dickerson whether he felt intimidated as a witness. In his seventh assignment of error, he contends the prosecutor impermissibly commented on his post-arrest silence during closing arguments, thereby prejudicing the jury.

{¶105} The conduct of a prosecutor during trial is not grounds for error unless it deprives a defendant of a fair trial. *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984); *State v. Anderson*, 11th Dist. Portage No. 2008-P-0002, 2008-Ohio-6413, ¶ 35. The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. *State v. Smith*, 87 Ohio St.3d 424, 442, 721 N.E.2d 93 (2000). In reviewing allegations of

20

prosecutorial misconduct, it is our duty to consider the conduct in the context of the entire trial. *See Darden v. Wainwright*, 477 U.S. 168, 183, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), fn. 15. Additionally, we recognize that an isolated comment, albeit improper, will not constitute reversible error if it does not deprive the defendant of a fair trial. *See State v. Jenkins*, 11th Dist. Trumbull No. 2006-T-0058, 2007-Ohio-4227, ¶ 54.

### *Witness Intimidation*

{¶106} As our review of the facts indicates, the prosecutor questioned Mr. Dickerson as to possible intimidation by others while the investigation was occurring and shortly before he took the stand. Mr. Jones contends the prosecutor's comments were highly prejudicial since they misled the jury into presuming that the intimidation occurred on behalf of Mr. Jones.

{¶107} It is clear from our review of the record that the prosecutor did not imply that Mr. Jones himself attempted to intimidate Mr. Dickerson. The circumstances of the incident and surrounding the witnesses' trial testimony were emotionally charged since they initially reported a self-inflicted gunshot wound and were reluctant to testify. There were also allegations that Mr. Dickerson was threatened by his peers the night before he testified and that spectators were waiting outside the courthouse threatening the witness. Thus, it is apparent under these circumstances that the prosecutor's questions were meant to bolster Mr. Dickerson's credibility.

{¶108} In *State v. Grimes*, 1st Dist. Hamilton No. C-030922, 2005-Ohio-203, the First District confronted a similar situation where the appellant alleged that the trial court erred by permitting the prosecutor to repeatedly allude to alleged witness intimidation by the appellant's family and friends. *Id.* at ¶ 54. The First District rejected the appellant's

21

argument, explaining that "the references to witness intimidation were not improper because they were offered to demonstrate why the witnesses' stories had changed, and why some of the witnesses had not immediately come forward to the police with information about the shooting." *Id.* at ¶ 56.

{¶109} The Second District similarly upheld prosecutorial questioning of a witness on intimidation where it was offered to bolster the credibility of the witness. Thus, in *State v. Carillo*, 2d Dist. Clark No. 00CA0025, 2000 WL 1513912 (Oct. 13, 2000), the Second District determined that "[a] review of the record demonstrates that the State offered [testimony of witness intimidation] to explain why some of its witnesses had initially lied to police when questioned about [the victim's] murder. In offering this evidence, the State was attempting to bolster the credibility of those witnesses whose credibility would otherwise be suspect because they had previously lied. That is a legitimate and proper purpose for eliciting evidence of this kind, and we see no abuse of discretion on the part of the trial court in admitting it." *Id.* at *4. *See also State v. Jones*, 8th Dist. Cuyahoga No. 110840, 2022-Ohio-2270, ¶ 32 (finding testimony that a witness fears reprisal for testifying is admissible because it is relevant to the witness' credibility, which applies equally to third-party intimidation that renders a witness reluctant to testify).

{¶110} Even if we did find the prosecutor's questioning improper and confusing for the jury, Mr. Jones failed to demonstrate any prejudice, substantial or otherwise. The prosecutor's questioning was not related to anything Mr. Jones did or caused to occur, but whether Mr. Dickerson felt coerced into lying. Thus, any error would be, at best, harmless since there is no indication it contributed to Mr. Jones' conviction and there is overwhelming evidence of guilt. *See State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-

Case No. 2021-P-0098

5052, 24 N.E.3d 1153, ¶ 29, ¶ 32 (holding that if after excising the improper evidence from the record, there remains overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction, the error will be deemed harmless).

{¶111} Having determined that the prosecutor's questioning was intended to bolster Mr. Dickerson's credibility in a situation where there were allegations of false reporting, late reporting, and reluctance to testify, we overrule Mr. Jones' second assignment of error.

### *Remarks Regarding Post-Arrest Silence During Closing Argument*

{¶112} As our review of closing arguments reveals, the prosecutor, on rebuttal, commented on Mr. Jones' post-arrest silence once he was in custody.

{¶113} The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." *See also State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 11. The Fifth Amendment guarantees a criminal defendant's right against self-incrimination, which includes the right to silence during police interrogation. *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "Once a person invokes his or her Fifth Amendment right to remain silent, the State cannot use the person's silence [either in pre-arrest or post-arrest circumstances] as substantive evidence of guilt in its case-in-chief." *State v. Bennett*, 9th Dist. Lorain No. 12CA010286, 2014-Ohio-160, ¶ 63, citing *Wainwright v. Greenfield*, 474 U.S. 284, 298-299, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). *See also Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) ("[T]he use for impeachment purposes of [a defendant's] silence, at the time of arrest and after

23

receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment.").

{¶114} In *Leach*, the Supreme Court of Ohio held that use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment and that the use of a defendant's post-arrest, post-*Miranda* invocation of his right to counsel as substantive evidence of guilt violates the Fourteenth Amendment. *Id.* at ¶ 1.

{¶115} There is no question commenting on Mr. Jones' silence once he was in custody was improper. This does not, however, end our analysis, since "violations of a defendant's constitutional right against self-incrimination are subject to a harmless error review." *State v. Castle*, 2017-Ohio-942, 86 N.E.3d 813, ¶ 22 (7th Dist.). Error is harmless under Crim.R. 52(A) if it does not affect substantial rights. In most cases, in order to be viewed as affecting substantial rights, the error must have been prejudicial. *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 36.

{¶116} An error will be deemed prejudicial if there is a reasonable probability that it affected the outcome of the judicial proceedings. *State v. Taylor*, 2017-Ohio-4395, 93 N.E.3d 1, ¶ 15 (4th Dist.). In determining whether prejudice has resulted from the state's comment about the defendant's assertion of his right to silence, courts consider factors such as "the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting the defendant's guilt." *State v. Contreras*, 8th Dist. Cuyahoga No. 89728, 2008-Ohio-1413, ¶ 34.

{¶117} It is troubling in this case that the trial court overruled defense counsel's objection and did not give a curative instruction to the jury. There is, however, as the record reveals, overwhelming evidence of Mr. Jones' guilt in this case. Thus, any error

24

resulting from the prosecutor's improper comment is harmless error. *See State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983), paragraph six of the syllabus (holding that constitutional errors are harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of the defendant's guilt).

{¶118} In *Castle, supra*, the Seventh District similarly remarked that "[w]hile it is troubling that the trial court failed to sustain the objections and did not instruct the jury to disregard the two comments, in looking at the record as a whole in this case we cannot say that they rose to the level of prejudice. Again, these comments were fairly brief and intertwined within the actual thrust of the prosecutor's argument that the Appellant provided absolutely no evidence regarding his theory that the robbery occurred as a result of some employee of the pharmacy's involvement. Again, while these two statements were improper, in order to find prejudice we must find that the evidence supporting Appellant's conviction was lacking in some regard. This record does not support such a contention." *Id.* at ¶ 24.

{¶119} Mr. Jones' seventh assignment of error is overruled.

### Improper Evidence

{¶120} Lastly, in his third assignment of error, Mr. Jones contends the trial court erred in admitting evidence supporting the claim he engaged in tampering with evidence. Specifically, Mr. Jones takes issue with Det. Kaley's testimony regarding the allegedly bloody clothing Mr. Jones discarded out the window while traveling on I-76 after the shooting occurred. Det. Kaley testified over defense counsel's objection that after the

25

witnesses reported the occurrence, they attempted to retrieve the clothing but were unable to locate it.

{¶121} A trial court's determination as to the admissibility of evidence is generally a matter within the sound discretion of the trial court. *Davis v. Killing*, 171 Ohio App.3d 400, 2007-Ohio-2303, 870 N.E.2d 1209, ¶ 11 (11th Dist.), citing *Schaffter v. Ward*, 17 Ohio St.3d 79, 80, 477 N.E.2d 1116 (1985). "Therefore, unless a trial court has clearly abused its discretion and a party has been materially prejudiced, the trial court's determination will not be reversed on appeal." *Id.*, citing *Maurer*, *supra*, at 265.

{¶122} The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *In re K.R.*, 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶ 29, citing *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶ 24, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). Stated differently, an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

{¶123} When an appellate court is reviewing a pure issue of law, the mere fact that the reviewing court would decide the issue differently is enough to find error (although harmless errors and errors not preserved for appellate review are not reversible). *Id.* at ¶ 67, fn. 2. By contrast, where the issue on review has been confided to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error. *Id.* at ¶ 67.

**{¶124}** The general principle that guides admission of evidence is that "[a]ll relevant evidence is admissible * * *." Evid.R. 402.

**{¶125}** "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. These provisions produce a low threshold of admissibility, which "'reflect[s] the policy favoring the admission of relevant evidence for the trier of fact to weigh.'" *State v. West*, 2017-Ohio-4055, 91 N.E.3d 365, ¶ 77 (5th Dist.), quoting *State v. Kehoe*, 133 Ohio App.3d 591, 606, 729 N.E.2d 431 (12th Dist.1999).

**{¶126}** Relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).

**{¶127}** Mr. Jones contends Det. Kaley's testimony was the only testimony regarding the discarded clothing and, as such, it was highly prejudicial. However, we fail to see how the evidence was (1) not relevant and (2) prejudicial when it went to the heart of the tampering with evidence charge. It was neither more prejudicial nor less relevant than the testimony regarding the missing handguns and was more probative than not in determining whether Mr. Jones tampered with evidence to remove any traces of himself from the scene. From Det. Kaley's testimony elicited on the stand, the jury understood the discarded clothing was never found and that any evidentiary value it had as far as linking Mr. Jones to the shooting was speculative at best. Thus, the jury was free to weigh the credibility of such evidence. Moreover, we can find no caselaw that prohibits admissible evidence when only one witness testifies to its existence.

27

{¶128} Further, we cannot say that this was inadmissible hearsay evidence. "Hearsay" is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A). The "declarant" is the person who makes the statement. Evid.R. 801(B).

{¶129} As our review of Det. Kaley's testimony revealed, he testified that "it was indicated to us in the course of our investigation *in speaking with these witnesses*, that he had specific clothes that were discarded on 76 going into Akron westbound." Defense counsel objected because there was no prior testimony from the eyewitnesses discussing discarded clothing. The prosecutor responded that he would not inquire into the witnesses' testimony, and the trial court overruled defense counsel's objection. During cross-examination, Det. Kaley elaborated that "going off of what the witnesses reported," he investigated along I-76 to locate the discarded clothing. All he found, however, was "a cow in a creek that got stuck that we had to help bail out. That's all we found."

{¶130} The hearsay rule does not apply when an out-of-court statement is introduced to explain the subsequent actions of a witness. *See State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). For instance, in *State v. Groves*, 6th Dist. Wood No. WD-13-065, 2014-Ohio-4337, the appellant was convicted of aggravated arson and insurance fraud. *Id.* at ¶ 1. One of her employees testified that she spoke with the alarm company after discovering that the alarm was not set when she entered the building. She relayed that the alarm company informed her it was not able to identify why the alarm was not set, that it had been turned off that previous Saturday, and that they were not able to

28

reset the alarm. *Id.* at ¶ 7. The Sixth District found this testimony was not offered for its truth but rather to explain the employee's actions when she returned to the office after the weekend. *Id.* Thus, the trial court did not err in ruling that the testimony was admissible. *Id.*

{¶131} Similarly, in this case, the officer's reference to "these witnesses" was to explain what prompted his investigation along I-76 to locate discarded clothing, which also informed the jury that the clothing was never located. Thus, if there was an error, we cannot say it rose to the level of prejudicial error where there was other evidence of tampering with evidence, i.e., the missing handguns, and the jury was aware of the speculative nature of the discarded clothing. *See also State v. Howard*, 11th Dist. Lake No. 2019-L-153, 2020-Ohio-5057, ¶ 42 (finding that a detective's testimony regarding his interview with appellant's brother was not hearsay as it was necessary to explain how the investigation turned to appellant).

{¶132} Finding the trial court did not abuse its discretion in allowing admissible testimony directly relevant to the crime charged, Mr. Jones' third assignment of error is overruled.

{¶133} The judgment of the Portage County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

Case No. 2021-P-0098